## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 15 |
| G.I. SPORTZ INC., *et al*,[1] | Case No.  20-12610 (___) |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

## DECLARATION OF MATTHEW B. LUNN IN SUPPORT OF THE VERIFIED PETITION FOR RECOGNITION OF FOREIGN PROCEEDING AND RELATED RELIEF AND MOTION FOR PROVISIONAL RELIEF IN AID OF CANADIAN PROCEEDING

**MATTHEW B. LUNN**, pursuant to 28 U.S.C. §1746, hereby declares as follows:

I am a partner of the firm of Young Conaway Stargatt & Taylor, LLP, which is counsel to KSV Restructuring Inc. in its capacity as the court-appointed receiver (the "**Receiver**") and authorized foreign representative of G.I. Sportz Inc., Tippmann US Holdco Inc., GI Sportz Direct LLC, Mission Less Lethal LLC, and Tippmann Finance LLC in a proceeding under Canada's *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3, pending before the Québec Superior Court, Commercial Division. I respectfully submit this affidavit in support of the Receiver's *Verified Petition for Recognition of Foreign Main Proceeding and Related Relief* and accompanying Memorandum of Law, and the Receiver's *Motion for Provisional Relief in Aid of Canadian Proceeding*.

1.  Attached is a true and correct copy of each of the following documents:

    A.  The affidavit of Gregory Collings, executed on October 8, 2020, appended to the *Motion for the Appointment of a Receiver* (the "Receivership Motion), and attesting to the truth of all facts alleged in the Receivership Motion (the "**Collings Affidavit**") (**Exhibit A**)

    B.  Report of KSV Restructuring Inc., dated October 9, 2020 (**Exhibit B**)

---

[1] The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, follow in parentheses:  G.I. Sportz Inc. (8551), Tippmann US Holdco Inc. (5037), GI Sportz Direct LLC (5359), Tippmann Sports, LLC, (0385), Mission Less Lethal LLC (4604) and Tippman Finance LLC (n/a). The G.I. Sportz Debtors' executive headquarters is located at 6000 Kieran Street, Montréal, Québec, Canada H4S 2B5.

2.  I declare under penalty of perjury under the laws of the United States of America that

the foregoing is true and correct.

Dated: October 16, 2020
      Wilmington, Delaware        */s/ Matthew B. Lunn*
                       Matthew B. Lunn
                       *Attorney for KSV Restructuring Inc., as Receiver and*
                       *Foreign Representative of the G.I. Sportz Debtors*

**EXHIBIT A**

**Collings Affidavit**

**CANADA**
**PROVINCE OF QUÉBEC**
**DISTRICT OF MONTRÉAL**

**No.:**

**S U P E R I O R   C O U R T**
**(Commercial Division)**

---

**IN THE MATTER OF THE RECEIVERSHIP OF**:

**G.I. SPORTZ INC.**, a legal person having its domicile at 6000 Kieran Street, in the city of Montreal, province of Quebec, H4S 2B5
-and-
**TIPPMANN US HOLDCO INC.**, a legal person having its domicile at 2955 Adams Center Road, in the city of Fort Wayne, state of Indiana
-and-
**GI SPORTZ DIRECT LLC**, a Limited Liability Company having its place of business at 570 Mantua Blvd, in the city of Sewell, state of New Jersey
-and-
**TIPPMANN SPORTS, LLC**, a Limited Liability Company having its place of business at 2955 Adams Center Road, in the city of Fort Wayne, state of Indiana
-and-
**MISSION LESS LETHAL LLC**, a Limited Liability Company having its place of business at 2955 Adams Center Road, in the city of Fort Wayne, state of Indiana
-and-
**TIPPMANN FINANCE LLC**, a Limited Liability Company having its place of business at 2955 Adams Center Road, in the city of Fort Wayne, state of Indiana

**Debtors/Respondents**

-and-

**GIS DEBT ACQUISITION PARTNERSHIP,** a partnership formed under the laws of Ontario and having a place of business at Suite 3510, 79 Wellington Street West, in the city of Toronto, province of Ontario, Canada

**Petitioner**

-and-

**KSV RESTRUCTURING INC.,** a legal person having a place of business at 150 King Street West, Suite 2308, in the city of Toronto, province of Ontario, M5H 1J9

**Receiver**

**MOTION FOR THE APPOINTMENT OF A RECEIVER**
**(Section 243 of the *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3**
**("*BIA*"))**

**TO ONE OF THE HONOURABLE JUDGES OF THE SUPERIOR COURT, SITTING IN COMMERCIAL DIVISION, IN AND FOR THE JUDICIAL DISTRICT OF MONTRÉAL, GIS DEBT ACQUISITION PARTNERSHIP RESPECTFULLY SUBMITS THE FOLLOWING:**

## I.  INTRODUCTION

1.    By the present Motion for the Appointment of a Receiver (the "**Motion**"), the Petitioner, GIS Debt Acquisition Partnership (the "**Partnership**") seeks, *inter alia*, (i) the appointment, on consent, of KSV Restructuring Inc. (the "**Receiver**" or "**KSV**") to act as receiver of the assets of G.I. Sportz Inc. ("**GI**"), Tippmann US Holdco Inc., GI Sportz Direct LLC, Tippmann Sports, LLC, Mission Less Lethal LLC and Tippmann Finance LLC (collectively, the "**Debtor**"); and (ii) an order (the "**Sealing Order**") sealing the confidential appendix to the Receiver's Report (as defined below).

## II.  FACTUAL BACKGROUND

### (A)  OVERVIEW

2.    The Partnership is the first-ranking secured lender of the Debtor.

3.    As more particularly described below, as of the date of this Motion, GI and the Guarantors (as defined below) are indebted to the Partnership, in the principal amount of approximately USD$29,432,889 (the "**Secured Obligations**") on a secured basis pursuant to certain credit facilities under a Credit Agreement between GI as borrower and the Bank of Montreal ("**BMO**") as lender (the "**Credit**

**Agreement**") and related security documents, as well as related guarantees and security agreements (together with the Credit Agreement, the "**Loan Documents**") provided by the Guarantors. BMO assigned its interests under the Loan Documents to the Partnership pursuant to an Assignment Agreement dated as of September 10, 2020 (the "**Assignment Agreement**"), the whole as appears in the redacted copy of the Assignment Agreement communicated herewith as **Exhibit R-1**. An unredacted copy of the Assignment Agreement will be attached to the confidential appendix to the Receiver's Report (as defined below), subject to the issuance of the Sealing Order.

4.    The Petitioner seeks the appointment of KSV as Receiver, on consent, to protect, preserve and sell the business and assets of GI and its subsidiaries in Canada and the United States (together, the "**Company**") as the Company has no ability to repay or refinance the Secured Obligations.

5.    Kore Outdoor Inc. ("**Kore Outdoor**"), a party related to the Partnership, or certain subsidiaries of Kore Outdoor (the "**Purchaser**") has agreed to purchase substantially all of the Canadian and U.S. assets of the Company in exchange for the assumption by the Purchaser of the Secured Obligations owed by the Company to the Partnership (the "**Contemplated Transaction**"). The Contemplated Transaction will result in the business of the Company continuing to operate as a going concern following its completion, with minimal to no interruptions to business operations and the preservation of almost two hundred jobs.

6.    KSV has advised that it is prepared to act as the Receiver in these proceedings.

7.    If appointed, the Receiver intends to seek an order recognizing these receivership proceedings in the United States (the "**US Recognition Order**"), as foreign representative, in order to complete the Contemplated Transaction.

8.    For the reasons set out in the Receiver's Report, KSV has advised that it supports the purpose of these receivership proceedings and the relief to be sought pursuant to the US Recognition Order. Following the issuance of the US Recognition Order, KSV will prepare and file a motion seeking an order from this Court approving the Contemplated Transaction and a subsequent report recommending the same, provided that it is satisfied that the Contemplated Transaction is fair and reasonable to the Company's stakeholders.  If the sale approval order (the "**Sale Approval Order**") is granted, KSV intends to seek a further recognition order of the same in the United States.

**(B)    OVERVIEW OF GI AND THE GUARANTORS**

9.    GI is a corporation amalgamated and existing under the laws of Canada with a head office located at 6000 Kieran Street, St. Laurent, Quebec (the "**Company Headquarters**"). GI is the result of an amalgamation dated January 1, 2016 by and between 9566058 Canada Limited and G.I. Sportz Inc.

10.    Set out below is an organizational chart showing the corporate structure of GI and its wholly-owned direct and indirect subsidiaries, Tippmann US Holdco Inc., GI Sportz Direct LLC, Tippmann Sports, LLC, Mission Less Lethal LLC, Tippmann Finance LLC, (collectively, the "**US Guarantors**"), G.I. Sportz Europe Limited (the "**UK Guarantor**", and collectively with the US Guarantors, the "**Guarantors**"), International Action Sports, LLC, KEE Action Sports I UK Limited, Tippmann Sports Europe SPRL, and G.I. Sportz (Germany) GmbH.



11.    The Company Headquarters and senior management of the Company – its nerve centre – are located in Quebec and housed in GI. The Company's main manufacturing facility is also located at the Company Headquarters in Quebec. The Company's previous major secured lender (BMO) is headquartered in Quebec, the Company's current first-ranking secured lender (the Partnership) was created in Ontario, and the Credit Agreement to which GI and the Guarantors are a party is governed by Quebec law. Further, the shares of the subsidiaries of GI which were pledged pursuant to the Loan Documents are similarly located in Canada.

12.    While the Company maintains certain business lines in the United States and distributes its products worldwide, each of the Debtor companies resides, carries on business and/or has property in Canada and accordingly its centre of main interest is in Canada.

13.    The following chart provides an entity-by-entity summary of the following factors for each of GI and its U.S. subsidiaries:

    a.  The location of the corporation;

    b.  The location of the corporation's business operations and its management; and

    c.  A description of the corporation's property located in Canada.

| Factor | U.S. | Canada | Details |
|---|---|---|---|
| **GI** | | | |
| Location | | | 6000 Kieran Ville St. Laurent, Quebec |
| Business Operations and Management | | X | GI is managed by officers and directors from its headquarters in Quebec and is the central location where paintballs are manufactured. Paintballs generate approximately half of GI's revenue. Essentially all significant decision making is subject to the discretion of GI's executive management located in Quebec.<br><br>GI's President is based in the U.S.; however, prior to the COVID-19 pandemic, the President spent approximately two weeks each month at the Company Headquarters and he continues to maintain an office there. In addition, the Chief Financial Officer and VP Operations are both based at the Company Headquarters. |
| Property | | X | GI maintains a bank account with BMO located in Quebec. The majority of GI's property is located at its headquarters in Quebec. |
| **Tippmann US Holdco Inc. ("Tippmann Holdco")** | | | |
| Location | | | 2955 Adams Center Road Fort Wayne, Indiana |
| Business Operations and Management | X | X | Tippmann Holdco is a Delaware company wholly owned by GI. Tippmann Holdco is the main holding company for GI's U.S. operations. Its sole purpose is to hold the shares of GI's other U.S. subsidiaries, all of which are formed and operate in the U.S., but are managed by GI from Canada. |
| Property | | X | The shares held by Tippmann Holdco were pledged in favour of BMO pursuant to the Loan Documents and, as a result, are located in Canada. Tippmann Holdco also maintains a bank account with BMO in Quebec. |

| Factor | U.S. | Canada | Details |
|---|---|---|---|
| **GI Sportz Direct LLC ("GI Sportz Direct")** | | | |
| Location | | | 570 Mantua Blvd., Sewell, New Jersey |
| Business Operations and Management | X | X | GI Sportz Direct is a Delaware limited liability company wholly owned by Tippmann Holdco. As GI is the sole shareholder and manager of Tippmann Holdco, GI, in Canada, is effectively the sole manager of GI Sportz Direct. GI Sportz Direct is the main U.S. operating subsidiary of GI. Its main business operation consists of the sale of paintballs and paintball accessories. |
| Property | | X | GI Sportz Direct is the sole owner of International Action Sports, LLC and KEE Action Sports I UK Limited, both of which are dormant companies which are currently in the process of being dissolved. The shares held by GI Sportz Direct were pledged in favour of BMO pursuant to the Loan Documents and, as a result, are located in Canada. GI Sportz Direct also maintains a bank account with BMO in Quebec. |
| **Tippmann Sports, LLC ("Tippmann Sports")** | | | |
| Location | | | 2955 Adams Center Road Fort Wayne, Indiana |
| Business Operations and Management | X | X | Tippmann Sports is wholly owned by Tippmann US Holdco. As GI is the sole shareholder and manager of Tippmann Holdco, GI, in Canada, is effectively the sole manager of Tippmann Sports. Tippmann Sports' sole purpose is as the managing member of Mission Less Lethal LLC. |
| Property | | X | Tippmann Sports is the sole shareholder of Mission Less Lethal LLC. The shares held by Tippmann Sports were pledged in favour of BMO pursuant to the Loan Documents and, as a result, are located in Canada. Tippmann Sports also maintains a bank account with BMO in Quebec. |
| **Mission Less Lethal LLC ("Mission Less Lethal")** | | | |
| Location | | | 2955 Adams Center Road Fort Wayne, Indiana |
| Business Operations and Management | X | X | Mission Less Lethal is an Indiana limited liability company wholly owned by Tippmann Sports, which is indirectly, beneficially owned and managed by GI. As Tippmann Sports is effectively managed by GI from Canada, so too is its direct subsidiary, Mission Less Lethal. Mission Less Lethal operates the Business' "Less Lethal" business segment and sells "Less Lethal" products to various entities in Canada and the United States. |
| Property | | X | Mission Less Lethal maintains a bank account with BMO in Quebec. |
| **Tippmann Finance LLC ("Tippmann Finance")** | | | |
| Location | | | 2955 Adams Center Road Fort Wayne, Indiana |
| Business Operations and Management | | X | Tippmann Finance is a Delaware limited liability company wholly owned by Tippmann US Holdco. It is currently inactive, but as GI is its sole shareholder and manager, it is effectively managed from Canada. |

| Factor | U.S. | Canada | Details |
|---|---|---|---|
| Property | | X | Tippmann Finance maintains a bank account with BMO in Quebec. |

### (i) The Business and Assets of the Company

14.    The Company is in the business of manufacturing and distributing paintballs, markers, and related accessories (the "**Paintball Business**"). In addition to its paintball products, the Company also offers "Less Lethal" products under the Mission Less Lethal brand through its subsidiary, Mission Less Lethal. "Less Lethal" products include carbon dioxide powered launchers and non-lethal rounds typically used for crowd control or other less lethal alternatives to the use of deadly force, and are primarily sold to government, law enforcement agencies and private security providers (together with the Paintball Business, the "**Business**").

15.    The Company maintains two manufacturing facilities, one at the Company Headquarters in Montreal, Quebec and the other in Fort Wayne, Indiana. The Company has nine distribution centres throughout North America and Europe, as well as a distribution network of 25 third-party distribution partners.

16.    The Company's most valuable tangible assets are its inventory, accounts receivable and equipment, including certain specialized equipment and moulds. In addition, the Company's assets include its rights under certain material agreements, patents and trademarks registered in Canada and the U.S., as well as its proprietary global distribution network.

17.    The Company serves a global customer base of over 3,000 fields and stores, through its network of distribution centers. GI is recognized as a global leader in quality paintballs and markets its paintball products to individuals at all levels of play, from entry level to competitive play market segments.

18.    The sale of paintballs manufactured by GI is one of GI's largest sources of revenue. Paintballs are a high margin, consumable product, reordered on a weekly or monthly basis; however, the Business has struggled in recent years, and more recently its operations were significantly impacted by the COVID-19 pandemic.

19.    GI is able to produce over 4 billion paintballs annually by using 22 soft-gel encapsulation machines located at its facility within the Company Headquarters

in Quebec, nearly four times as many machines as its next closest competitor. The Company sells its paintballs, gear, accessories and markers worldwide to both paintball fields and mass market channels, including to Walmart, Dick's Sporting Goods and Academy Sports & Outdoors.

20.    The Company also sells its "Less Lethal" products worldwide, primarily to government, law enforcement agencies and private security, including U.S. Customs & Border Protection, the U.S. Department of Homeland Security, the U.S. State Department, German riot police and the Canadian prison services, among others.

### (ii) Facilities

21.    The Company does not own any real property. It operates from the following leased locations:

   a. The Company Headquarters and paintball plant located at 6000 Kieran Ville St. Laurent, Quebec, leased by GI from 8012261 Canada Inc.;

   b. Marker manufacturing plant premises located at 2955 Adams Center Road Fort Wayne, Indiana, leased by Tippmann Sports LLC from Dennis Tippman, Sr. Family, LLC;

   c. U.S. headquarters located at 888 SE 3rd Ave Suite 500, Ft. Lauderdale, Florida, leased by G.I. Sportz Direct LLC from G.I. Group Florida, L.P.;

   d. Premises used for distribution at 4747 Boulevard Cote-Vertu Ouest, Saint-Laurent, Quebec, leased by GI from Fiberlinks;

   e. Premises used for distribution at 14101 Rosecrans Ave Suite D, La Mirada, California, leased by G.I. Sportz Direct LLC from Valley View Farms Business Center Venture LLC;

   f. Premises used for distribution at 59 SW 12th Ave, Unit 103, Dania, Florida, leased by G.I. Sportz Direct LLC from G.I. Group Florida L.P.;

   g. Premises used for distribution at 2955 Adams Center Road, Fort Wayne, Indiana, leased by G.I. Sportz Direct LLC from Dennis Tippmann SR Family Partnership LP;

   h. Premises used for distribution at 11723 Lime Kiln Rd., Neosho, Missouri, leased by G.I. Sportz Direct LLC from Ozark Terminal Inc.;

i.  Premises used for distribution at Unit 3 Squires Farm Industrial Estate Palehouse Common, Uckfield, United Kingdom, leased by G.I. Sportz Europe Ltd., from K2 Transport and Logistics Ltd.;

j.  Premises used for distribution at 14820 Carmenita Rd, Norwalk, California, leased by G.I. Sportz Direct LLC from 3-Way Logistics Inc.;

k.  Premises used for distribution at 11950 SW Leveton Dr., Tualatin, Oregon, leased by G.I. Sportz Direct LLC from Javelin Logistics;

l.  Premises used for distribution at 570 Mantua Blvd., Sewell, New Jersey, leased by G.I. Sportz Direct LLC from Spirit Realty Capital;

m. Premises used for distribution at 10580 Newkirk Suite 303, Dallas, Texas, leased by G.I. Sportz Direct LLC from Vincnt J. Stagliano, John Gourley and Peggy Stagliano;

n.  Premises used for distribution and housing offices at Adrenaline House, Brooklands Park, Farningham Road, Crowborough, ast Sussux, United Kingdom, leased by G.I. Sportz Europe Ltd. from Paper Products Limited; and

o.  Premises used for distribution and housing offices at Am Strassback 1, D-61169 Friedberg, Germany, leased by G.I. Sportz GmbH from Ulrich Grundstucksvermaltungsgesellschaft mbH.

**(iii)    Employees**

22.  The Company currently employs approximately 235 full time employees in Canada, the United States and Europe. The following chart provides an overview of the employees, by the entity which employs them and their location:

| Company | Location | Number of Employees |
|---|---|---|
| G.I. Sportz Inc. | Quebec, Canada | 140 |
| G.I. Sportz Inc. | Ontario, Canada | 1 |
| G.I Sportz Direct LLC | United States | 78 |
| G.I. Sportz Europe Limited | United Kingdom | 6 |

| G.I. Sportz (Germany) GmbH | Germany | 10 |
|---|---|---|
| | **Total** | 235 |

23. None of the employees is represented by a union or covered by a collective bargaining agreement. The Company currently maintains health and benefit plans made available to all of its full-time employees in Canada and the United States. All of the Company's employees in the United States are employed by GI Sportz Direct, which maintains a 401(K) provided by Fidelity for full-time employees. The Company and the Purchaser intend to continue to maintain the available employee plans on the same terms and conditions currently in effect.

24. All employee obligations are current, other than accrued vacation pay which totaled approximately $521,000 as at August 31, 2020.

### (iv)    Share Capital

25. The authorized capital structure of GI includes an unlimited number of common shares. As at October 8, 2020, GI had approximately 5,000,000 common shares outstanding consisting of 3,530,000 Class A common shares, 1,347,418 Class B common shares and 122,582 Class C common shares. All classes of common shares have identical voting rights.

26. As at October 8, 2020, the common shares of GI were held according to the following table:

| Shareholder | Percentage of common shares held |
|---|---|
| Fulcrum Capital Partners (Collector) V, LP | 53.80% |
| The RIFT No. 1[1] | 22.76% |
| Export Development Canada | 9.72% |
| Liborio Argentio Investments Inc. | 4.41% |
| Mitchell Greenspoon | 2.92% |

---

[1] Richmond Italia Family Trust No. 1

Mtl#: 3345900

| | |
|---|---|
| NWM Private Equity Limited Partnership | 1.91% |
| Mitch Greenspoon (2011) Family Trust | 1.52% |
| Draxxus Direct Limited | 1.22% |
| Summer Salt Pty Ltd. | 0.73% |
| Arend Pilon | 0.61% |
| Darrin Rosenthal | 0.40% |
| **Total** | 100.00% |

27.  GI also maintains an employee stock option plan representing up to 15% of the issued and outstanding share capital of GI. As at September 10, 2020, 637,500 options were currently outstanding.

**(C)  THE CREDIT FACILITY**

**(i)  The Credit Facility and GI Security**

28.  As of September 14, 2018, GI and BMO entered into the Credit Agreement pursuant to which four credit facilities were created, the whole as appears from a copy of the Credit Agreement communicated herewith as **Exhibit R-2**. Facility 1 is a committed, margined revolving credit facility in the aggregate principal amount of up to USD$20,000,000. Facility 2 is a committed, non-revolving reducing term credit facility in the aggregate principal amount of up to USD$30,000,000. Facility 3 is a demand treasury facility, at the sole discretion of BMO, up to an aggregate principal amount not to exceed USD$3,000,000 in deemed risk content, and Facility 4 is a demand MasterCard facility at the sole discretion of BMO up to an aggregate principal amount of USD$250,000 (the "**MasterCard Facility**"). As at the date of this Motion, GI's indebtedness under the Credit Agreement was in the principal amount of approximately USD$29,432,889 (excluding fees, expenses and taxes, which continue to accrue).

29.  As security for payment of the principal and interest outstanding under the Credit Agreement, GI entered into a movable hypothec dated as of September 12, 2018, governed by the laws of the Province of Quebec (the "**Movable**

**Hypothec**") and granted a first ranking hypothec in favour of BMO, over all of GI's present and future movable property, rights and assets, corporeal and incorporeal, the whole as appears from a copy of the Movable Hypothec communicated herewith as **Exhibit R-3**.

30.    On September 13, 2018, BMO registered notice of its security against "G.I. Sportz Inc." at the Register of Personal and Moveable Real Rights under number 18-1008310-0001, the whole as appears from a copy of such registration communicated herewith as **Exhibit R-4**.

31.    As further security for the Secured Obligations, GI charged all of its shares held in the UK Guarantor to BMO pursuant to a Share Charge dated September 14, 2018, the whole as appears from a copy of the Share Charge communicated herewith as **Exhibit R-5**.

**(ii) The Guarantor Security**

32.    As a condition precedent to BMO entering into the Credit Agreement, the Guarantors guaranteed payment of, among other things, the principal and interest owing under the Credit Agreement and all other amounts owing to BMO under the Loan Documents pursuant to two guarantee agreements, dated as of September 14, 2018, governed by the laws of New York and England, respectively (the "**Guarantees**"), the whole as appears from a copy of the Guarantees communicated herewith as **Exhibit R-6**.

33.    As security for the Guarantees, the Guarantors entered into the following documents in favour of BMO (collectively, the "**Guarantor Security Agreements**"), the whole as appears from a copy of the Guarantor Security Agreements communicated herewith *en liasse* as **Exhibit R-7**:

    a. a general security agreement governed by the laws of the State of New York dated as of September 14, 2018 with the US Guarantors in favour of BMO, granting a security interest in all the current and after-acquired movable property of the US Guarantors;

    b. a trademarks and service marks security agreement and a patents security agreement, each governed by the laws of the State of New York, dated as of September 14, 2018, with GI, Tippmann Sports, LLC and Mission Less Lethal, LLC in favour of BMO, granting a security interest in, among other things, all marks, licences, inventions, letters patent and foreign patents;

- 13 -

c. a debenture governed by the laws of England dated as of September 14, 2018 with the UK Guarantor in favour of BMO, granting BMO a security interest in the Charged Assets and the Charged Property, as such terms are defined in the debenture;

d. a pledge agreement over shares in a GmbH governed by the laws of Germany, dated as of October 25, 2018, pursuant to which the UK Guarantor pledged in favour of, and granted a security interest to, BMO over all present and future shares of the UK Guarantor in G.I. Sportz (Germany) GmbH; and

e. a security transfer agreement dated as of November 6, 2018, pursuant to which the UK Guarantor transferred title to certain present and after-acquired assets to BMO.

**(D)    THE DEBT ASSIGNMENT**

34.    Following certain events of default under the Loan Documents by GI which are continuing, as more fully discussed below, the Partnership approached BMO to discuss the possibility of purchasing BMO's rights and obligations under the Loan Documents. These discussions resulted in the execution of the Assignment Agreement.

35.    Prior to the above-noted debt assignment, KSV, as proposed Receiver, sought and obtained security opinions from independent legal counsel, with respect to the security granted pursuant to the Loan Documents in the U.S. and Canada, the results of which will be summarized in the Receiver's Report to be filed with the Court.

36.    Pursuant to the Assignment Agreement, BMO sold and assigned to the Partnership all of its rights and obligations under the Loan Documents (other than (i) any Letters of Credit or L/C Agreements, (ii) the SBA PPP Loan, (iii) any Hedge Contracts (as such terms are defined in the Credit Agreement), as these were terminated and (iv) the MasterCard Facility which was excluded but remains available to GI and has been cash collateralized).

37.    As a result of the Assignment Agreement, the Partnership has assumed all of BMO's rights and obligations under the Loan Documents and to the Secured Obligations.

38.    Immediately prior to the assignment, none of the facilities remained available (other than the MasterCard Facility), and as a result, none of the facilities remain

available to the Debtor to make further draws to the date of this Motion (other than the MasterCard Facility). Moreover, the Partnership has no intention of making fresh advances to the Debtor under these facilities and are permitting the use of current cash-on-hand to pay the carrying costs of the Business.

39.    The Debtor presently has sufficient cash to fund operations but continues to incur negative cash flow. The Debtor requires additional funding to restructure and grow the Business. The Partnership is prepared to advance such additional funds to the Debtor, but only if the Business can be successfully restructured pursuant to the Contemplated Transaction.

**(E)    INDEBTEDNESS TO OTHER CREDITORS**

**(i) Other Secured Creditors**

40.    There are no known creditors that have priority over the Partnership with respect to the collateral of the Company.

41.    On October 6, 2020, a search was conducted at the Register of Personal and Movable Real Rights for the Province of Quebec against GI. The search discloses that the following parties have registered security interests over certain assets of GI, other than the Partnership, as appears from extracts of the Register of Personal and Movable Real Rights communicated herewith as **Exhibit R-8**:

  a.  BMO holds a registration registered on September 10, 2020, in respect of the cash collateral securing the MasterCard Facility which was excluded from the Assignment Agreement, as discussed above;

  b.  Paccar Financial Services Ltd. holds two registrations registered on July 29, 2015 and July 29, 2016, respectively, in respect of two motor vehicles; and

  c.  Xerox Canada Ltd. holds a registration registered on December 28, 2015, in respect of a leased Xerox machine**.**

42.    GI is also subject to a Debenture issued to Export Development Canada ("**EDC**" and together with BMO, Paccar Financial Services Ltd. and Xerox Canada Ltd., the "**Other Secured Creditors**") on or about September 1, 2016 in the principal amount of USD$2,500,000 (the "**EDC Debenture**"). The EDC Debenture is subordinated to the Secured Obligations pursuant to a Subordination Agreement dated September 13, 2018, the whole as appears from a copy of the Subordination Agreement communicated herewith as **Exhibit R-9.**

43.    EDC (i) is a minority shareholder in GI, as noted above, (ii) is aware of these receivership proceedings and the Contemplated Transaction and (iii) as of the date of this Motion, has not expressed opposition to any of the relief sought.

### (ii) Unsecured Creditors

44.    As at August 31, 2020, the Company had trade payable obligations in the amount of approximately USD$2.7 million, including USD$1.1 million owing by Canadian subsidiaries of the Debtor and USD$1.6 million owing by U.S. subsidiaries of the Debtor. The Company's internal financial statements as at August 31, 2020 also reflect approximately USD$2.5 million of accrued vendor payables for inventory that is either in transit or has been received, but the corresponding invoice has not yet been posted into the payable system. The Company does not have the ability to satisfy these payables.

45.    GI Sportz Direct is currently indebted to the US federal government in the principal amount of $1.16 million pursuant to the SBA PPP Loan. Such obligation is unsecured and remains outstanding to the date of this Motion. GI Sportz Direct is prepared to submit an application for forgiveness of such amount to the online portal once the US federal government makes it available. The Company believes it has met the criteria for forgiveness of the SBA PPP Loan.

46.    The Company also has an outstanding liability in respect of accrued but unpaid vacation pay owing to its employees. As at August 31, 2020, this liability was approximately $521,000.

### (F)    THE FINANCIAL SITUATION OF THE COMPANY

47.    The Company is currently unable to service its obligations as they come due, including its debt obligations under the Credit Agreement. The Business was under considerable stress prior to the emergence of the COVID-19 pandemic, having incurred losses totaling over USD$45 million since January 1, 2018, according to its year-end financial statements for the periods ending December 31, 2018 and December 31, 2019 and its year-to-date internal financial statements for the eight-month period ended August 31, 2020.

48.    As paintball is a social sport played by a large number of participants, often in teams and in relatively confined areas, the COVID-19 pandemic has had a significant negative impact on the Business due to Canadian and U.S. government policies mandating social distancing. As a result, net losses have continued in fiscal 2020 (approximately USD$2 million for the eight month period

ended August 31, 2020). The Company's operations effectively ceased between March and July of 2020 and have only recently started to recover.

49.    Moreover, the value of the Company is substantially less than the Secured Obligations on both a going-concern and liquidation basis. It is no longer feasible for the Company to service the Secured Obligations, nor does the Company have the capacity to satisfy the principal amount owing thereunder.

50.    The Company has insufficient liquidity to meet its obligations including the repayment of amounts due under the Credit Agreement, and has defaulted on various covenants under the Credit Agreement, as evidenced by the Events of Default (as hereinafter defined).

51.    Interest continues to accrue under the Credit Agreement. Without additional financing, and/or indulgences from the Partnership, the Company has no ability to service the Indebtedness together with its other obligations, including those owed to the above-noted Other Secured Creditors and Unsecured Creditors.

**(G)    CONTEMPLATED TRANSACTION**

52.    In an effort to preserve the Business on a going concern basis, the Debtor and the Partnership agreed upon these receivership proceedings, and the Contemplated Transaction. In the absence of the Contemplated Transaction the Company will be forced to liquidate, resulting in a significant shortfall to the Partnership, the loss of 219 jobs in Canada and the United States and the discontinuation of the Business.

53.    The Receiver, the Purchaser, and the Partnership have agreed in principle to a form of asset purchase agreement (the "**APA**") for the sale of substantially all of the assets of the Company to the Purchaser, which can only be effective upon (i) the issuance of the receivership order pursuant to this Motion, (ii) KSV's appointment as Receiver by this Court, (iii) the issuance of the US Recognition Order, (iv) the issuance of the Sale Approval Order and (iv) the issuance of the US Sale Recognition Order.

54.    Pursuant to the APA, (i) Kore Outdoor (US) Inc., a wholly-owned U.S. subsidiary of Kore Outdoor, will acquire the U.S.–based assets of the Business in exchange for a demand non-interest-bearing note (the "**US Note**") having a principal amount equal to the value of such assets; and (ii) Kore Outdoor will assume the Company's liability for the Secured Obligations in exchange for the transfer of the Canadian assets of the Business and the US Note (the "**Purchased Assets**").

55.     With the necessary consents, the Purchaser will assume certain of the Company's contracts with its suppliers and landlords and, if the Contemplated Transaction is approved, the Purchaser intends to offer employment to approximately 180 of the Company's employees in Canada and the United States.

56.     Following completion of the Transaction, Kore Outdoor will be the sole beneficial owner of the Purchased Assets and the Partnership will be the sole secured lender to Kore Outdoor, the beneficial owner of such assets.

57.     The Partnership has agreed to provide further funding to facilitate the continued operation of the Business following completion of the Contemplated Transaction.

58.     Prior to the execution of the APA with the Purchaser, numerous strategic alternatives were considered by the Company, but the Contemplated Transaction was considered to be in the best interest of the Company and its various stakeholders, including the majority of the Company's employees who are located in Quebec. Additionally, the value of the Company's assets in a liquidation is materially lower than their value as a going-concern. Further evidence concerning the rationale for the Contemplated Transaction will be provided in a report to be filed by the Receiver.

59.     The Contemplated Transaction will result in the retention of approximately 120 jobs in Quebec. This was of material import when considering various alternatives to the Contemplated Transaction as the Purchaser, the Partnership and the Company are committed to the preservation of jobs in Quebec.

## III.    EVENTS LEADING TO THE PRESENT MOTION

### (A)    EVENTS OF DEFAULT

60.     The Company is in default under the Credit Agreement for defaulting on its obligations under the Loan Documents (the "**Events of Default**"). Upon the occurrence of any event of default which is continuing under the Credit Agreement and for so long as the event of default shall continue, the lender has the right to declare the entire principal amount of all advances outstanding, all unpaid accrued interest and all fees and other amounts to be paid to the lender, to be immediately due and payable. As of the date of this Motion, the Events of Default remain unremedied.

61.     Pursuant to an amended and restated forbearance agreement between GI, the Guarantors and BMO, dated as of May 22, 2020, GI and the Guarantors have

acknowledged and admitted that they were in default of their obligations under the Loan Documents, that such defaults had not been cured and are continuing and that the Secured Obligations were immediately due and owing, the whole as appears from a copy of the amended and restated forbearance agreement communicated herewith as **Exhibit R-10**. The term of the forbearance period expired on July 1, 2020 and was not renewed or extended.

### (i) Capital Requirement Defaults

62.    Under the Credit Agreement, GI is required to maintain the Senior Funded Debt to EBITDA Ratio set out in Section 9.3(a) and the Fixed Charge Coverage Ratio set out in Section 9.3(b) (the "**Financial Ratio Covenants**"). GI has been offside its Financial Ratio Covenants from the fiscal quarter ending December 31, 2018 to the date of this Motion. GI failed to maintain the ratios required by the Financial Ratio Covenants for any of the fiscal quarters in such periods, each of which is an Event of Default under the Credit Agreement.

63.    Under Section 9.3(d)(ii) of the Credit Agreement, GI is also required to maintain EBITDA of USD$1,050,000 calculated on a year-to-date basis (for the fiscal year commencing January 1, 2019). GI failed to maintain such EBITDA for the fiscal quarter ending December 31, 2019. Such failure is also an Event of Default under the Credit Agreement.

64.    GI also failed to confirm a USD$2,000,000 scheduled injection of capital, which constitutes a further Event of Default under the Credit Agreement.

65.    As of the date of this Motion, the Company has failed to repay the Indebtedness (as defined below), having received demand for same. The Company has no reasonable prospects of being able to repay such Indebtedness and has acknowledged this fact in the Section 244 Notices (as defined below).

### (B)    ENFORCEMENT STEPS

66.    Section 10.2 of the Movable Hypothec permits the holder of the hypothec to exercise any and all of the rights and recourses it may have at law, upon the occurrence of an event of default which is continuing. The Partnership is thus seeking the appointment of the Receiver under the BIA.

67.    On September 14, 2020, in reliance on the Events of Default described above, Davies Ward Phillips & Vineberg LLP ("**Davies**"), on behalf of the Partnership, provided the Company with a prior notice of the exercise of hypothecary right of

sale by judicial authority (the "**Prior Notice**"), a copy of which is communicated herewith as **Exhibit R-11**.

68.    Concurrently with the Prior Notice, the Partnership sent Notices of Intention to Enforce Security under section 244 of the BIA (the "**Section 244 Notices**") to GI and the US Guarantors, respectively. Additionally, Davies, on behalf of the Partnership, demanded payment of the Indebtedness as it then was, being the amount of USD$36,432,889, plus interest and costs which continue to accrue, in the form of demand letters addressed to GI and the US Guarantors, respectively.

69.    In the demand letters Davies notified GI and the US Guarantors of the Events of Default and advised that the Secured Obligations, including the aggregate principal amount drawn under the credit facilities and any accrued interest thereon (the "**Indebtedness**") was payable immediately and no later than September 25, 2020.

70.    GI and each of the US Guarantors have (i) acknowledged receipt of the Section 244 Notices, (ii) acknowledged the amounts due under such notices are payable to the Partnership, (iii) acknowledged that they cannot pay the amounts due, even if further delay was given, (iv) expressly waived any delay of repayment, and (v) consented to the immediate enforcement by the Partnership of its security. These notices and demand letters, including the executed acknowledgements by GI and the US Guarantors, are communicated herewith *en liasse* as **Exhibit R-12**.

71.    As of the date of this Motion, the Events of Default have not been cured and are continuing and the Indebtedness remains unpaid.

## IV. REASONS TO APPOINT A RECEIVER

72.    As at the date of this Motion the total amount of the outstanding Indebtedness was USD$29,432,889 plus accrued interest and costs (which continue to accrue), and the Events of Default have not been cured and are continuing.

73.    As described above, the Company's going concern and liquidation value is significantly less than the Secured Obligations. The purpose of these proceedings is to appoint the Receiver with a view to completing the Contemplated Transaction, ensuring that the Business continues as a going concern and resulting in the retention of approximately 180 jobs, including 120 jobs in Quebec.

74.    As the Company has no reasonable prospects of sourcing fresh capital, or otherwise satisfying the Secured Obligations, the appointment of the Receiver is necessary in order to protect, preserve and sell the business and assets of the Company.

75.    If appointed in Canada, the Receiver, as foreign representative, intends to seek the US Recognition Order for the purposes of implementing the Contemplated Transaction. There is currently no intention to commence foreign proceedings in any other jurisdiction.

76.    As described above (i) the Partnership is permitted to appoint a receiver; (ii) the Partnership has provided GI with notice of its intention to exercise this remedy; (iii) the Debtor has consented to these proceedings; (iv) the ten-day period set out in the Section 244 Notices and the BIA has expired; and (v) the twenty-day period set out in the Prior Notice and the *Civil Code of Québec* has similarly expired.

77.    KSV has consented to act as the Receiver, if appointed.

## V. PROPOSED COURT ORDERED CHARGES AND FUNDING OF THE RECEIVERSHIP

78.    The Partnership has agreed to a court-ordered charge (the "**Administrative Charge**") in favour of the Receiver (if appointed), each of its counsel, as security for payment of their respective fees and disbursements, in each case at their standard rates and charges, which shall form a first charge on the property of the Company in priority to the claims of the Company's secured creditors.

### (A)    FUNDING OF THE RECEIVERSHIP

79.    While there is currently sufficient cash on hand to fund operations during the receivership, if necessary, the Partnership has agreed to provide the Receiver with financing to fund the receivership through receiver certificates. A condition to the financing of the receivership, if required, is that the receiver certificates have priority over the claims of the Company's secured creditors. This charge would rank behind the Administrative Charge and any priority payables (i.e. obligations of the Company secured by statutory deemed trusts or liens ranking in priority to the Partnership's existing security).

80.    Subject to the approval of the Court, it is proposed that any financing would be reflected in certificates substantially in the form attached as Schedule "A" to the draft receivership order communicated herewith as **Exhibit R-13**.

## VI. PROCEDURAL CONSOLIDATION

81.   In order to facilitate these proceedings as well as the efforts related to the restructuring of the affairs, the Debtors seek a procedural consolidation for GI's, Tippmann US Holdco Inc.'s, GI Sportz Direct LLC's, Tippmann Sports, LLC's, Mission Less Lethal LLC's and Tippmann Finance LCC's Court files, in order for these files to be consolidated in one single Court file.

82.   The Petitioner submits that a procedural consolidation of the respective Debtors' insolvency files, such as proposed above, will facilitate, among other things, the restructuring process, while limiting duplications and therefore the costs generated by same.

## VII.   CONCLUSIONS

83.   In light of the foregoing, the Partnership hereby respectfully seeks the issuance of an Order substantially in the form of the draft order (Exhibit R-13).

84.   The Partnership proposes that KSV act as a receiver.

85.   KSV is qualified to act as receiver in this matter as it holds a licence to act as trustee under the *Bankruptcy and Insolvency Act* and has agreed to act in this matter if appointed by this Court.

86.   The present Motion is well-founded in fact and in law.

**WHEREFORE THE PETITIONER REQUESTS THAT THIS HONOURABLE COURT:**

[1]   **GRANT** the present *Motion for the Appointment of a Receiver*;

[2]   **ISSUE** an order in the form of the draft Order attached to this Motion as **Exhibit R-13**;

[3]   **WITHOUT COSTS**, save and except in case of contestation.

MONTRÉAL, October 8, 2020

*Davies Ward Phillips & Vineberg LLP*

DAVIES WARD PHILLIPS & VINEBERG LLP
Attorneys for the Petitioner, GIS Debt Acquisition Partnership

**CANADA**
**PROVINCE OF QUÉBEC**
**DISTRICT OF MONTRÉAL**

**S U P E R I O R   C O U R T**
**(Commercial Division)**

**No.: 500-**

**IN THE MATTER OF THE RECEIVERSHIP OF**:

**G.I. SPORTZ INC.**
-and-
**TIPPMANN US HOLDCO INC.**
-and-
**GI SPORTZ DIRECT LLC**
-and-
**TIPPMANN SPORTS, LLC**
-and-
**MISSION LESS LETHAL LLC**
-and-
**TIPPMANN FINANCE LLC**

**Debtors/Respondents**

-and-

**GIS DEBT ACQUISITION PARTNERSHIP**

**Petitioner**

-and-

**KSV RESTRUCTURING INC.**

**Receiver**

---

**AFFIDAVIT OF GREGORY COLLINGS**

I, the undersigned, Gregory Collings, exercising my occupation at Fulcrum Capital Partners (Collector) V, LP ("**Fulcrum**"), solemnly declare as follows:

1. I am a Partner of Fulcrum, the majority shareholder of the Debtors and an affiliated entity of certain general partners of the Petitioner;

2. All the facts alleged in the present *Motion for the Appointment of a Receiver* are true.

- 2 -

AND I HAVE SIGNED:


Gregory Collings

SOLEMNLY AFFIRMED before me in
Repentigny, Province of Québec, this 8th day
of October 2020, by Gregory Collings, whose
oath was taken in Toronto, Province of Ontario,
and received in Repentigny, the whole by
technology means and in accordance with the
memorandum of the Québec Ministry of Justice
dated March 20, 2020

Commissioner of Oaths for the Province of Québec

Mtl#: 3345900

**CANADA**
**PROVINCE OF QUÉBEC**
**DISTRICT OF MONTRÉAL**

**S U P E R I O R   C O U R T**
(Commercial Division)

No.:

IN  THE  MATTER  OF  THE  RECEIVERSHIP
OF:

**G.I. SPORTZ INC.**
-and-
**TIPPMANN US HOLDCO INC.**
-and-
**GI SPORTZ DIRECT LLC**
-and-
**TIPPMANN SPORTS, LLC**
-and-
**MISSION LESS LETHAL LLC**
-and-
**TIPPMANN FINANCE LLC**
                              **Debtors/Respondents**

-and-

**GIS DEBT ACQUISITION PARTNERSHIP**

                                   **Petitioner**

-and-

**KSV RESTRUCTURING INC.**

                                      **Receiver**

---

## NOTICE OF PRESENTATION

**TO  :**  **G.I. SPORTZ INC.**
        6000 Kieran Street, Montreal,
        Quebec, H4S 2B5

        Debtor

**AND :**  **Mtre Jane Dietrich**              **Mtre Melissa Rivest**
        Cassels Brock & Blackwell LLP     **Mtre Antoine Leduc, Ad. E.**
        Suite 2100, Scotia Plaza          Lapointe Rosenstein Marchand
        40 King Street West               Melançon LLP
        Toronto, ON, M5H 3C2              1 Place Ville Marie Bureau 1300,
                                          Montréal, QC H3B 0E6

        Attorney for Receiver             Attorneys for Receiver

- 2 -

**AND :**  **Gabriel Sirois**
Export Development Canada
150 Slater
Ottawa, ON, K1A 1K3


**AND :**  **Vincenzo Carrozza**
Revenu Québec
C.P. 5000, succursale Place-
Desjardins, Montréal (Québec) H5B
1A7

**AND :**  **Mtre Chantal Comtois**
Agence du Revenu du Canada
200, René-Lévesque West
boulevard, Tour west, 9th floor
Montréal, (Québec) H2Z 1X4

**AND :**  **Mtre Marc Duchesne**
**Mtre Claudine Milette**
Borden Ladner Gervais, LLP
1000, De la Gauchetière Street
West Suite 900
Montréal (Québec) H3B 5H4

<u>Attorneys for Bank of Montreal</u>

TAKE NOTICE that the attached *Motion for the Appointment of a Receiver* will be presented for adjudication before Honourable Justice Michel A. Pinsonnault of the Superior Court, in and for the judicial District of Montréal, via videoconference, on October 15, 2020 at 2:15 pm. Coordinates for the virtual hearing will be communicated to the Service List once provided by the Court.

**DO GOVERN YOURSELVES ACCORDING.**


**MONTRÉAL,** October 8 2020

*Davies Ward Phillips & Vineberg LLP*

**DAVIES WARD PHILLIPS & VINEBERG LLP**
Attorneys for the Petitioner, GIS Debt Acquisition Partnership

**CANADA**
**PROVINCE OF QUÉBEC**
**DISTRICT OF MONTRÉAL**

**S U P E R I O R   C O U R T**
**(Commercial Division)**

**No.:**

**IN THE MATTER OF THE RECEIVERSHIP OF**:

**G.I. SPORTZ INC.**
-and-
**TIPPMANN US HOLDCO INC.**
-and-
**GI SPORTZ DIRECT LLC**
-and-
**TIPPMANN SPORTS, LLC**
-and-
**MISSION LESS LETHAL LLC**
-and-
**TIPPMANN FINANCE LLC**

**Debtors/Respondents**

-and-

**GIS DEBT ACQUISITION PARTNERSHIP**

**Petitioner**

-and-

**KSV RESTRUCTURING INC.**

**Receiver**

### LIST OF EXHIBITS

EXHIBIT R-1      Assignment Agreement

EXHIBIT R-2      Copy of the Credit Agreement

EXHIBIT R-3      Copy of the Movable Hypothec

EXHIBIT R-4      Copy of the registration of the notice at the Register of Personal and Movable Real Rights

EXHIBIT R-5      Copy of the Share Charge

EXHIBIT R-6      Copy of the Guarantees

- 2 -

| EXHIBIT R-7 | Copy of the Guarantor Security Agreements |
|---|---|
| EXHIBIT R-8 | Copy of extracts of the Register of Personal and Movable Real Rights |
| EXHIBIT R-9 | Copy of the Subordination Agreement |
| EXHIBIT R-10 | Copy of the amended and restated forbearance agreement |
| EXHIBIT R-11 | Copy of the Prior Notice |
| EXHIBIT R-12 | Notices and Demand Letters |
| EXHIBIT R-13 | Draft receivership order |

- 3 -

**MONTRÉAL,** October 8, 2020

*Davies Ward Phillips & Vineberg LLP*

**DAVIES WARD PHILLIPS & VINEBERG LLP**

Attorneys for the Petitioner, GIS Debt Acquisition Partnership

No.

# S U P E R I O R   C O U R T

Commercial Division

District of Montréal

**IN THE MATTER OF THE RECEIVERSHIP OF:**

**G.I. SPORT ZINC.**
-and-
**TIPPMANN US HOLDCO INC.**
-and-
**GI SPORTZ DIRECT LLC**
-and-
**TIPPMANN SPORTS, LLC**
-and-
**MISSION LESS LETHAL LLC**
-and-
**TIPPMANN FINANCE LLC**

Debtors/Respondents

-and-
**GIS DEBT ACQUISITION PARTNERSHIP**

Petitioner

-and-
**KSV RESTRUCTURING INC.**

Receiver

## MOTION FOR THE APPOINTMENT OF A RECEIVER

**ORIGINAL**

**DAVIES**

Counsel for Petitioner
Mtre Christian Lachance
T 514.841.6576
clachance@dwpv.com
File 273027

1501 McGill College Avenue, 26th floor          T 514.841.6400
Montréal, QC  H3A 3N9                             F 514.841.6499
Canada

DAVIES WARD PHILLIPS & VINEBERG LLP                              BP-0181

Mtl#: 3362737.1

**EXHIBIT B**

**Report of KSV Restructuring Inc., dated October 9, 2020**





**Report of**
**KSV Restructuring Inc.**
**as Proposed Receiver of**
**G.I. Sportz Inc., Tippmann US Holdco Inc.,**
**GI Sportz Direct LLC, Tippmann Finance LLC,**
**Tippmann Sports, LLC and**
**Mission Less Lethal LLC**

**October 9, 2020**

## Contents

Page

1.0    Introduction ................................................................................................ 1
        1.1    KSV's Prior Mandate .................................................................... 2
        1.2    Purposes of this Report .............................................................. 2
        1.3    Restrictions ................................................................................. 3
        1.4    Currency ...................................................................................... 3

2.0    Background ............................................................................................. 4
        2.1    Organizational Chart ................................................................... 5

3.0    Financial Information ............................................................................. 6
        3.1    Balance Sheet ............................................................................. 6
        3.2    Creditors ...................................................................................... 7
        3.3    Income Statement ..................................................................... 10

4.0    Center of Main Interest......................................................................... 10

5.0    Funding of these Proceedings ............................................................ 12

6.0    Procedural Consolidation .................................................................... 12

7.0    Conclusion and Recommendation ...................................................... 13

## Confidential Appendices

Appendix                                                                                        Tab

        Debt Assignment Agreement dated September 10, 2020..................................... 1

CANADA
**PROVINCE OF QUÉBEC**
**DISTRICT OF MONTRÉAL**
**No: _____**

**SUPERIOR COURT**
**(Commercial Division)**
_____

**IN THE MATTER OF THE RECEIVERSHIP OF:**

**G.I. SPORTZ INC.,**
**TIPPMANN US HOLDCO INC.,**
**GI SPORTZ DIRECT LLC,**
**TIPPMANN FINANCE LLC,**
**TIPPMANN SPORTS, LLC AND**
**MISSION LESS LETHAL LLC**

**Debtors**

**-and-**

**GIS Debt Acquisition Partnership**

**Petitioner**

**-and-**

**KSV Restructuring Inc.**

**Proposed Receiver**
_____

**REPORT OF**
**KSV RESTRUCTURING INC.**
**AS PROPOSED RECEIVER**
**October 9, 2020**

## 1.0 Introduction

1. This report ("Report") is filed by KSV Restructuring Inc. ("KSV") as proposed receiver (the "Receiver") of the property, assets and undertaking of G.I. Sportz Inc. ("G.I. Canada") and five of its direct and indirect US subsidiaries, being Tippmann US Holdco Inc. ("Tippmann Holdco"), G.I. Sportz Direct LLC ("G.I. US"), Tippmann Finance LLC ("Tippmann Finance"), Tippmann Sports LLC ("Tippmann Sports") and Mission Less Lethal LLC ("MLL") (collectively, the "US Debtors" and together with G.I. Canada, the "Companies").

2. KSV understands that GIS Debt Acquisition Partnership ("GIS"), the Companies' principal secured creditor, intends to bring a receivership application before the Superior Court (Commercial Division) of the Province of Quebec, District of Montreal (the "Quebec Court") for an order (the "Receivership Order"), *inter alia*, placing the Companies in receivership and appointing KSV as Receiver of the Companies' property, assets and undertakings (the "Canadian Proceedings"). KSV has consented to act as Receiver should the Quebec Court grant the Receivership Order.

3.    The proposed Receivership Order, if granted, would also appoint KSV as the Companies' foreign representative.  If the Quebec Court grants the Receivership Order, the Receiver intends to immediately file petitions, in its capacity as foreign representative of the Companies, seeking recognition of the Canadian Proceedings as foreign main proceedings under Chapter 15 of title 11 of the United States Code in The United States Bankruptcy Court for The District of Delaware (the "US Court") (the "US Proceedings" and together with the Canadian Proceedings, the "Proceedings").

4.    The primary purpose of these Proceedings is to complete a going-concern sale between the Receiver, as vendor, and Kore Outdoor Inc. and Kore Outdoor (US) Inc., affiliates of Fulcrum Capital Partners (Collector) V, LP ("Fulcrum"), the Companies' majority shareholder and an affiliate of GIS, as purchaser (collectively, the "Purchaser"), for substantially all of the Companies' business and assets pursuant to an Asset Purchase Agreement to be entered into, subject to the Quebec Court's approval, between the Receiver and the Purchaser (the "Transaction").

5.    Immediately following provisional recognition of the Canadian Proceedings by the US Court, the Receiver intends to bring a motion before the Quebec Court recommending that it approve the Transaction.  If the Quebec Court issues an order approving the Transaction, the Receiver intends to immediately seek recognition of that order by the US Court.

## 1.1  KSV's Prior Mandate

1.    On April 30, 2020, KSV[1] was engaged by Fulcrum, in its capacity as the Companies' controlling shareholder, to consider restructuring options for the Companies.  KSV's engagement letter contemplates that its mandate will terminate immediately upon its appointment as court officer in any insolvency proceeding involving the Companies, following which KSV's duties and obligations would be governed by statute and by any court order appointing it.

2.    In carrying out its prior mandate, KSV obtained background information concerning the Companies' business and operations and performed financial analyses.  KSV was cognizant throughout its prior mandate that the Companies are insolvent and that it is likely that it would be appointed as a court officer in these proceedings.  The information KSV obtained about the Companies during its prior mandate forms the basis for its recommendations, including concerning the contemplated Transaction.

## 1.2  Purposes of this Report

1.    The purposes of this Report are to:

   a)    provide information about the Companies and the pending receivership proceedings;

   b)    provide evidence that Quebec is the centre of main interest ("COMI") and that the Quebec Court should have principal jurisdiction for these proceedings;

[1] KSV's affiliate, KSV Advisory Inc., was engaged for this advisory mandate.  KSV is a wholly-owned subsidiary of KSV Advisory Inc.

c) discuss a debt assignment transaction between GIS and Bank of Montreal ("BMO") completed on September 10, 2020, whereby BMO's debt of approximately $36.4 million was assigned at a significant discount to GIS (the "Debt Assignment");

d) summarize security opinions provided by Canadian and US legal counsel to the Receiver, in respect of GIS's security in the Province of Quebec and in the States of New York, Delaware and Indiana;

e) summarize the Administration Charge and the Receiver's Borrowing Charge (each as defined in Section 5 below); and

f) recommend that the Quebec Court issue an order appointing the Receiver as foreign representative of the Companies for the purpose of the US Proceedings, approving the Administration Charge and the Receiver's Borrowing Charge, sealing the Confidential Appendix to this Report and approving the proposed procedural consolidation of the Companies' receivership proceedings.

## 1.3  Restrictions

1. In preparing this Report, KSV has relied upon the Companies' unaudited financial information.  KSV has not audited, reviewed or otherwise verified the accuracy or completeness of the information in a manner that would comply with Generally Accepted Assurance Standards pursuant to the Chartered Professional Accountants Canada Handbook.

2. KSV expresses no opinion or other form of assurance with respect to the financial information presented in this Report or relied upon by KSV in preparing this Report. Reliance on the financial information in this Report by any third party for investment or credit purposes shall not be considered sufficient and such parties are strongly advised to perform their own due diligence.  KSV shall have no responsibility for any reliance placed on the financial information presented in this Report by any investor, creditor or other stakeholder.

3. Future oriented financial information relied upon in this Report is based upon assumptions regarding future events; actual results achieved may vary from this information and these variations may be material.  Future events include consumer, supply chain, governmental and other macro-economic factors resulting from the Covid-19 pandemic.  The full impact of Covid-19 is unknown and cannot be determined at this time.

## 1.4  Currency

1. Unless otherwise noted, all currency references in this Report are in US dollars.

## 2.0  Background

1.  The Companies manufacture and distribute paintballs, markers and related accessories.  Paintball is played in large groups of people and in teams.  As a result, the Covid-19 pandemic has had a significant negative impact on the Companies due to US and Canadian government policies mandating social distancing.  The Companies' operations effectively ceased between March and July 2020 and only resumed in August, with Covid-19 continuing to present a risk to the business.

2.  G.I. Canada's business was acquired out of an insolvency process in 2010 by Richmond Italia, a prominent professional paintball player.  Mr. Italia indirectly owns 20.76% of G.I. Canada.  Since Fulcrum's acquisition in 2015 of G.I. Canada, the business grew through expansion of its product offering and by acquisition.  The Companies' current corporate organizational chart is set out in Section 2.1 below.

3.  The Companies serve a global customer base of over 3,000 paintball fields and stores.  G.I. Canada is recognized as a global leader in the manufacturing of high-quality paintballs. G.I. Canada markets its paintball products to individuals at all levels of play, from entry level to competitive play market segments.

4.  G.I. Canada is able to produce over four billion paintballs annually by using 22 soft-gel encapsulation machines, nearly four times as many machines as its next closest competitor.  It sells its paintballs, gear, accessories and markers worldwide to both paintball fields and mass market channels, including to Walmart, Dick's Sporting Goods and Academy Sports & Outdoors.

5.  Fulcrum, an affiliate of GIS, is the Companies' majority shareholder by virtue of its 53.8% interest in G.I. Canada.  On September 10, 2020, GIS acquired BMO's secured debt of approximately $36.4 million at a substantial discount pursuant to the Debt Assignment.

6.  On September 14, 2020, GIS demanded repayment of the loan and issued a Notice of Intention to Enforce Security pursuant to Section 244 of the *Bankruptcy and Insolvency Act* ("BIA").  GIS has also provided the Companies with *Prior Notice of the Exercise of the Hypothecary Right of Sale by Judicial Authority* under the *Civil Code of Quebec* ("Civil Code") of its intention to sell by judicial authority and seek the appointment of a receiver.  KSV understands that the notice periods under the BIA and the Civil Code have elapsed.

7.  Subject to obtaining court approval in Canada and the US, the Transaction will see substantially all of the Companies' business and assets in Canada and the US sold to the Purchaser on a going-concern basis.  For reasons that will be provided in a subsequent report, the Receiver supports the Transaction.

### 2.1 Organizational Chart

1.   The Companies' corporate organizational chart is provided below.



2.   The business of each entity is as follows:

a)   G.I. Canada is the parent and main operating company in the group.  G.I. Canada employs 140 employees in Quebec, representing approximately 60% of the Companies' total workforce of 235 employees.  The workforce is not unionized and it does not maintain any pension plans.

    G.I. Canada operates from leased premises in Montreal, Quebec, which serves as the Companies' head office and main production facility.  The landlord is an entity owned by Mr. Italia.  Mr. Italia is a shareholder of the Companies and of the Purchaser.

b)   G.I. US is a Delaware company which operates as a distributor of paintball products throughout the US.  It employs 78 employees in the US.

c)   Tippmann Sports was acquired in 2013.  It operates from leased premises in Indiana.   G.I. US employs the individuals involved in Tippmann Sports' operations.  "Tippmann" is a well-known paintball marker and accessory brand. Tippmann Sports' products are manufactured from a leased production facility in Fort Wayne, Indiana.

d)   MLL offers "Less Lethal" products under the *Mission Less Lethal* brand.  Less Lethal products include carbon dioxide powered launchers and non-lethal rounds typically used for crowd control or other less lethal alternatives primarily sold to government, law enforcement agencies and private security providers. MLL's launchers are manufactured at the Companies' leased production facility in Fort Wayne, Indiana.

e)      G.I. Sportz Europe Limited ("G.I. UK") and G.I. Sportz (Germany) GmbH ("G.I. Germany") are the European sales and distribution arm of the Companies.  G.I. UK and G.I. Germany employ six and 10 employees, respectively.

f)      Tippmann Finance and Tippmann Holdco are inactive companies.  KEE Action Sports I UK Limited, Tippmann Sports Europe, SPRL and International Action Sports LLC are also inactive and are in the process of being dissolved.

3.      In addition to the Companies' two manufacturing facilities in Montreal, Quebec and Fort Wayne, Indiana, the Companies have nine distribution centres throughout North America and Europe, as well as a network of 25 third-party distribution partners.

## 3.0  Financial Information

### 3.1  Balance Sheet

1.      The Companies' consolidated balance sheet as at August 31, 2020 is presented below.

| Description | US$000s |
|---|---|
| Assets | |
| Cash | 10,321 |
| Accounts receivable | 7,541 |
| Inventory | 13,116 |
| Prepaid expenses and other | 2,435 |
| Machinery and equipment | 6,860 |
| Intangible assets | 2,534 |
| Total Assets | 42,807 |
| Liabilities and Equity | |
| Bank indebtedness | 36,063 |
| Accounts payable and accrued liabilities | 7,039 |
| Income taxes payable | (1,184) |
| Export Development Corporation loan | 2,638 |
| Paycheck Protection Program loan | 1,163 |
| Vendor Take Back Notes | 2,943 |
| Total Liabilities | 48,662 |
| Shareholders' Equity/(deficiency) | (5,855) |
| Total Liabilities and Shareholders' Equity | 42,807 |

2.      Other than cash, the Companies' working capital assets are its inventory (book value of approximately $13 million), which is principally comprised of paintball, marker and airsoft products, and accounts receivable owing from various customers, including paintball field operators, specialty stores and mass market retailers.  As at August 31, 2020, the book value was approximately $7.5 million.

3.      The Companies' long-term assets are primarily comprised of machinery and equipment located at production facilities in Montreal and Indiana, and intangible assets, including goodwill, patents and trademarks.

4. The Companies' August 31, 2020 balance sheet reflects negative equity of approximately $6 million, reflecting accumulated losses of more than $45 million since January 1, 2018, as discussed in Section 3.5 below.

## 3.2 Creditors

### 3.2.1 GIS

1. As at August 31, 2020, GIS was owed approximately $36.1 million under the credit facilities it acquired from BMO pursuant to the Debt Assignment (the "Senior Credit Facility"). The amount owing as at the date of this Report is approximately $29.4 million, before interest and costs which continue to accrue. Cash on hand was applied to reduce the amount owing under the Senior Credit Facility.

2. A redacted version of the Debt Assignment Agreement is attached to the Affidavit filed by GIS in support of its receivership application. An unredacted version is attached as Confidential Appendix "1" to this Report. The Receiver recommends that the unredacted version of the Debt Assignment Agreement be filed with the Quebec Court on a confidential basis and remain sealed until further order of the Quebec Court. This will preserve the confidentiality of the amount paid by GIS to BMO in order to address the risk that the availability of this information may negatively impact future recoveries if the Transaction is not completed. The Receiver does not believe that any stakeholder will be prejudiced if the information is sealed at this time.

3. In anticipation of these proceedings, and as part of its diligence on the Companies and the Transaction, KSV retained and instructed independent Canadian and US legal counsel to review the security held by GIS. The results of those opinions are summarized below.

   a) **Quebec**: Lapointe Rosenstein Marchand Melançon LLP reviewed the security held by GIS in Quebec and issued an opinion providing that, subject to customary assumptions and qualifications contained therein, the security granted under the Senior Credit Facility is valid and enforceable against G.I. Canada's assets in Quebec.

   b) **Delaware**: Young Conaway Stargatt & Taylor, LLP reviewed the security held by GIS in Delaware and issued an opinion providing that, subject to customary assumptions and qualifications contained therein, the security granted under the Senior Credit Facility is valid and enforceable against the Companies' assets in Delaware.

   c) **New York and Indiana**: Kramer Levin Naftalis & Frankel LLP reviewed the security held by GIS in the States of New York and Indiana and issued an opinion providing that, subject to customary assumptions and qualifications contained therein, the security granted under the Senior Credit Facility is valid and enforceable against the Companies' assets in New York and Indiana.

4. Copies of the security opinions can be made available to the Quebec Court should it wish to review them.

### 3.2.2 Export Development Canada

1.  On or around September 1, 2016, G.I. Canada issued a secured debenture to Export Development Canada ("EDC") in the principal amount of $2.5 million (the "EDC Debenture").  As at August 31, 2020, the Companies' obligations owing under the EDC Debenture totaled approximately $2.64 million, plus interest and costs which continue to accrue.  The amounts owing to EDC are secured by substantially all of the Companies' business and assets.

2.  Pursuant to a Subordination Agreement dated September 13, 2018, the EDC Debenture is subordinated to the credit facility acquired by GIS from BMO under the Debt Assignment.

3.  EDC also has a 9.72% equity interest in G.I. Canada.

4.  EDC will be served with GIS' receivership application materials.

### 3.2.3   Other

1.  Other than GIS and EDC, creditors with registered security interests in certain of the Companies' assets are reflected in the table below.

| Creditor | Registration Date | Asset |
|---|---|---|
| BMO | September 10, 2020 | BMO holds a registration in respect of the cash collateral securing a $60,000 MasterCard facility (the "BMO Security") |
| Paccar Financial Services Ltd. | July 29, 2015 and July 29, 2016 | Two motor vehicles |
| Xerox Canada Ltd. | December 28, 2015 | Photocopier |

### 3.2.4 Unsecured Creditors

1.  The book value of the Companies' trade payables totaled approximately $2.7 million as at August 31, 2020, which is broken down by entity in the table below.

| Entity | 0 – 30 Days | 31 – 60 Days | 61 – 90 Days | 91+ Days | Total |
|---|---|---|---|---|---|
| GI Canada | 642,672 | (13,078) | 58,645 | 411,372 | 1,099,611 |
| GI US | 873,645 | 77,767 | 65,442 | (196,163) | 820,691 |
| Tippmann Sports | 732,016 | 12,461 | (2,054) | 25,613 | 768,036 |
| MLL | - | 493 | - | (2,218) | (1,725) |
| Total | 2,248,333 | 77,643 | 122,033 | 238,604 | 2,686,613 |

2.  The table below reflects that the ten largest vendor balances represent approximately $1.55 million (56%) of the total accounts payable as at August 31, 2020.

| Vendor | Company | Accounts Payable ($) |
|---|---|---|
| G-Shang Metal Corporation | GI US | 419,673 |
| Indorama Ventures PTA Montreal LP | GI Canada | 318,298 |
| Dow Chemical Canada ULC | GI Canada | 193,042 |
| IMCD Canada Limited | GI Canada | 146,152 |
| Wise Industrial Company Limited | Tippmann Sports | 91,837 |
| Worlite Industry Co. Ltd. | GI US | 85,632 |
| On Time Transport | GI Canada | 82,900 |
| Tippmann Arms Co. LLC | Tippmann Sports | 75,149 |
| Ascent Global Logistics International | GI US | 70,325 |
| Hangzhou Silver Bird Sporting Goods | Tippmann Sports | 69,116 |
| **Total** | | **1,552,124** |

3.  In addition to vendor obligations listed in the table, the Companies' August 31, 2020 internal financial statements also reflect approximately $2.5 million of accrued payables owing for inventory that was either in transit or received but the corresponding invoice was not yet posted in the payables system.

4.  The Companies also have the obligations summarized below.

    a)  Vendor Take Back Notes ("VTB Notes")

        In February 2017, G.I. UK, a subsidiary of G.I. Canada, acquired Manic Paintball Europe LLP and Dark Sports Limited (UK) and G.I. Germany, a subsidiary of G.I. UK, acquired MAXS GmbH.  As consideration, G.I. UK and G.I. Germany issued promissory notes to the vendors totaling approximately $2.94 million. The notes are payable on the fifth anniversary of the transaction (being February 2022).  G.I. Canada guaranteed the VTB Notes.

    b)  Paycheck Protection Program ("PPP") loan

        PPP is a program established by the US federal government to provide assistance for small businesses as a result of the Covid-19 pandemic.  In April 2020, G.I. US applied for, and received, a PPP loan of approximately $1.16 million.  The Receiver understands that the PPP loan owing by G.I. US is unsecured and remains outstanding as at the date of this Report.

### 3.3    Income Statement

1.  The table below summarizes the Companies' consolidated operating results for its fiscal years ended December 31, 2018 and 2019 and for the eight-month period ending August 31, 2020.

|  | 2020 (eight months) (unaudited) | 2019 unaudited | 2018 (audited) |
|---|---|---|---|
| Sales | 38,584 | 71,849 | 80,443 |
| Cost of sales | (26,380) | (48,341) | (53,373) |
| Gross margin | 12,204 | 23,508 | 27,070 |
| Gross margin (%) | 31.6% | 32.7% | 33.7% |
| Operating expenses | (11,351) | (26,024) | (25,103) |
| EBITDA | 853 | (2,516) | 1,967 |
| Interest | (1,894) | (2,493) | (2,223) |
| Depreciation and other | (1,412) | (9,709) | (29,007)[2] |
| Income taxes/recovery | 448 | 860 | 118 |
| Net profit/(loss) | (2,005) | (13,858) | (29,145) |

2.  The Companies' operating results reflect, *inter alia*:

    a)  losses since January 1, 2018 total approximately $45 million;

    b)  losses have continued in the current fiscal year, in part due to the Covid-19 pandemic crisis; and

    c)  since 2018, the Companies have generated negative or negligible EBITDA, which has not been sufficient to service the Companies' debt.

## 4.0  Center of Main Interest

1.  The Receiver is of the view that Montreal is the COMI for the Companies for the following reasons:

    a)  essentially all of the Companies' strategic decision-making and management functions occur in Montreal.  The North American operations, including those of the US Debtors, are managed from G.I. Canada's registered office in Montreal, Quebec;

    b)  G.I. Canada has entered into the majority of the Companies' significant contracts and agreements, including the credit agreements with BMO (since assigned to GIS), and has guaranteed the Companies' leases in the US;

---

[2] In fiscal 2018, the Companies recorded a $23.2 million goodwill and intangible asset impairment charge.

c) the majority of the principals, directors and officers of each of the Companies, including the US Debtors, are Canadian residents, including the majority of the boards of directors.  While the CEO is a US resident living in Florida, he often attends at the head office, including for Board meetings.  Prior to the Covid-19 pandemic, the CEO spent approximately half of each month at the Montreal head office.  The CEO also maintains an office at the head office;

d) meetings of the Boards of Directors for each of the Companies are typically convened or chaired in Canada;

e) As at the date of this Report, G.I. Canada is the principal obligor on all of the Companies' secured debt;

f) the principal secured creditor, GIS, is Canadian and the only other material secured creditor, EDC, is also Canadian;

g) all of the paintball inventory, the Company's main product line, is manufactured by G.I. Canada in Quebec.  Paintball sales represented 50% of the Companies' annual revenue for the fiscal year ended December 31, 2019;

h) the majority of the Companies' administrative functions, including general accounting, financial reporting, budgeting and cash management, is performed by G.I. Canada;

i) the Company's human resource function is centralized and managed by G.I. Canada;

j) the Companies' main bank accounts are located at a BMO branch in Montreal, Quebec.  All of the US Debtors have property and/or bank accounts in Quebec and the treasury management function is centralized at the head office in Montreal, Quebec; and

k) the US Debtors are funded by G.I. Canada using a cash management process it coordinates and controls.

2. Each of the US Debtors is a guarantor of the secured obligations owing to GIS, and accordingly, the US Debtors are each insolvent.  As well, as noted above, each of the US Debtors has recently opened bank accounts in Canada with nominal deposits and therefore each meet the definition of an "insolvent person" under the BIA.  Accordingly, the Quebec Court has the jurisdiction to appoint a receiver over those entities.

3. The Receiver is also of the view that the contemplated cross-border proceeding provides a centralized, fair and cost-efficient process to reorganize the business of the Companies as opposed to concurrent and separate processes in Canada and the US under their respective reorganization legislation.

## 5.0  Funding of these Proceedings

1.  As at the date of this Report, the Companies have approximately $5.4 million of cash in their bank accounts.  These funds are intended to be used to fund Canadian and US operations during these proceedings and the costs of these proceedings.  The cash is subject to the security of GIS and funding is in its discretion.

2.  The Receivership Order does not contemplate the Receiver opening new bank accounts to control receipts and disbursements.  It is contemplated that the Companies will continue to use their existing bank accounts and cash management system in Canada and the US.  The Receiver believes this is appropriate because: (a) GIS, the principal economic stakeholder, has consented to this arrangement; (b) it will limit the operational disruption caused by opening new bank accounts in the name of the Receiver; and (c) it will reduce the administrative burden on management and costs involved for the Receiver to control the Companies' receipts and disbursements in Canada and the US.  The Receiver intends to monitor the bank account activity throughout the Proceedings.

3.  The proposed Receivership Order contemplates two charges on the Companies' business and assets:

    a)  a $750,000 charge in favour of the Receiver and its counsel, as security for payment of their respective fees and disbursements, which shall form a first charge on the Companies' property (the "Administration Charge"), other than the BMO Security.  The Receiver's Charge is customary in Canadian receivership proceedings to protect the professionals involved for their fees and costs if for any reason they are not paid during the proceeding.  Given that the receivership proceedings are brought in Quebec, the Transaction documents are governed by Ontario law and the intention is to seek recognition of the Canadian Proceedings in the US, the Receiver has retained Quebec, Ontario and US Counsel. None of the professionals involved in these proceedings has received a retainer; and

    b)  a $1 million charge to secure any funding provided by GIS during these proceedings (the "Receiver's Borrowing Charge").  Pursuant to the Receivership Order, any such advances, if required, are to be secured by a charge subordinate only to the Administration Charge and the BMO Security, and evidenced by the issuance of Receiver's Certificates by the Receiver.  As at the date of this Report, it is not contemplated that funding under the Receiver's Borrowing Charge will be required.

4.  The Receiver is of the view that both of these charges are reasonable and appropriate as they are consistent with the model receivership order and will facilitate the orderly administration of these proceedings.

## 6.0  Procedural Consolidation

1.  The proposed Receivership Order contemplates that the Canadian Proceedings will be procedurally consolidated into one file with the Quebec Court.

2.   The Receiver believes this is appropriate as it will assist to streamline the Canadian Proceedings, avoid duplicative materials filed in six separate Quebec Court files and provides for the Canadian Proceedings to be administered in a cost-efficient manner.

## 7.0  Conclusion and Recommendation

1.   Based on the foregoing, the Receiver respectfully recommends that the Quebec Court make an order granting the relief detailed in Section 1.2 (f) of this Report.

*    *    *

All of which is respectfully submitted,

*KSV Restructuring Inc.*

**KSV RESTRUCTURING INC.,**
**IN ITS CAPACITY AS THE PROPOSED COURT-APPOINTED RECEIVER OF**
**G.I. SPORTZ INC., TIPPMANN US HOLDCO INC., GI SPORTZ DIRECT LLC,**
**TIPPMANN FINANCE LLC, TIPPMANN SPORTS, LLC AND MISSION LESS LETHAL LLC**
**AND NOT IN ITS PERSONAL CAPACITY**