## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 15 |
| G.I. SPORTZ INC., *et al*,[1] | Case No.  20-12610 (___) |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

## MEMORANDUM OF LAW IN SUPPORT OF VERIFIED PETITIONS
## FOR RECOGNITION OF FOREIGN PROCEEDING AND RELATED RELIEF

---

[1] The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, follow in parentheses: G.I. Sportz Inc. (8551), Tippmann US Holdco Inc. (5037), GI Sportz Direct LLC (5359), Tippmann Sports, LLC (0385), Mission Less Lethal LLC (4604), and Tippmann Finance LLC (n/a). The G.I. Sportz Debtors' executive headquarters is located at 6000 Kieran Street, Montréal, Québec, Canada H4S 2B5.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................2

JURISDICTION AND VENUE ...................................................................................3

FACTUAL BACKGROUND ........................................................................................4

ARGUMENT .................................................................................................................9

    I.     The Canadian Proceeding Is Entitled to Recognition as a Foreign Main Proceeding..........................................................................................................9

         A.     These Chapter 15 Cases Concern a "Foreign Proceeding"........................9

         B.     The Chapter 15 Cases Were Commenced by a "Foreign Representative"...........................................................................................11

         C.     These Cases Were Properly Commenced Under Chapter 15 ...................11

         D.     The Canadian Proceeding Should Be Recognized as a Foreign Main Proceeding ...............................................................................................12

         E.     The Receiver Is Entitled to an Order Granting Recognition of the Canadian Proceeding as a Foreign Main Proceeding ...............................15

    II.    The Receiver Is Entitled to an Order Applying Section 365 of the Bankruptcy Code and Enforcing the Receivership Order....................................19

         A.     The Requested Relief Is Warranted Under Sections 105(a), 1507(m), and 1521 of the Bankruptcy Code...............................................19

         B.     The Application of Section 365(e) of the Bankruptcy Code Is Warranted Under Section 1521 of the Bankruptcy Code .........................22

         C.     The Enforcement of the Receivership Order Is Warranted Under Section 1521 of the Bankruptcy Code .......................................................23

         D.     The Enforcement of the Receivership Order Is Warranted Under Section 1507 of the Bankruptcy Code .......................................................24

         E.     The Requested Relief Does Not Violate Section 1506 of the Bankruptcy Code .....................................................................................25

CONCLUSION..............................................................................................................28

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re ABC Learning Centres Ltd.*,
    445 B.R. 318 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013)................................12

*Ad Hoc Group of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*,
    701 F.3d 1031 (5th Cir. 2012) ........................................................................ *passim*

*In re Arxx Corp., et al.*,
    No. 13-13313 (Bankr. D. Del. Jan 31, 2014)....................................................10, 20

*In re Atlas Shipping A/S*,
    404 B.R. 726 (Bankr. S.D.N.Y. 2009)......................................................................20

*Bankruptcy and Insolvency Act*,
    R.S.C. 1985, c. B-3 .....................................................................................................1

*In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd., Inc.*,
    238 B.R. 25 (Bankr. S.D.N.Y. 1999), *aff'd*, 238 B.R. 699 (S.D.N.Y. 2002).
    Bankruptcy....................................................................................................................20

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
    374 B.R. 122 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) ............12, 14, 15

*Caddel v. Clairton Corp.*,
    105 B.R. 366 (N.D. Tex. 1989).............................................................................11

*In re CDS U.S. Holdings, Inc.*, et al.,
    No. 20-11719 (Bankr. D. Del. Aug. 11 2020) ......................................................10

*Collins v. Oilsands Quest, Inc.*,
    484 B.R. 593 (S.D.N.Y. 2012)..............................................................................20

*Cornfeld v. Investors Overseas Servs. Ltd.*,
    471 F. Supp. 1255 (S.D.N.Y. 1979), *aff'd*, 614 F.2d 1286 (2d Cir. 1979) ......................11, 16

*In re Cozumel Caribe S.A. de C.V.*,
    482 B.R. 96 (Bankr. S.D.N.Y. 2012) .....................................................................19

*In re Davis*,
    191 B.R. 577 (Bankr. S.D.N.Y. 1996) .................................................................11

*In re Earthrenew IP Holdings LLC, et al.*,
No. 10-13363 (Bankr. D. Del. Nov. 10, 2010) ...............................................10, 20

*In re ENNIA Caribe Holding N.V.*,
594 B.R. 631 (Bankr. S.D.N.Y. 2018)...................................................................25

*In re Ephedra Prods. Liab. Litig.*,
349 B.R. ...............................................................................................................26

*In re Ephedra Prods. Liab. Litig.*,
349 B.R. 333 (S.D.N.Y. 2006)...............................................................................26

*In re Fairfield Sentry Ltd.*,
484 B.R. 615 (Bankr. S.D.N.Y. 2013) ...................................................................20

*In re Gold & Honey, Ltd.*,
410 B.R. 357 (Bankr. E.D.N.Y. 2009)...................................................................26

*Hilton v. Guyot*,
159 U.S. 113 (1895).............................................................................................26

*Iida v. Kitahara (In re Iida)*,
377 B.R. 243 (B.A.P. 9th Cir. 2007).....................................................................26

*In re The Aldo Grp. Inc.*, et al.,
No. 20-11062 (Bankr. D. Del. June 3, 2020) .........................................................10

*In re Innua Canada Ltd.*,
Case No. 09-16362 (Bankr. D.N.J. Apr. 15, 2009).........................................10, 21

*In re JustFly Corp.*, et al.,
No. 20-11207 (Bankr. D. Del. June 25, 2020) .......................................................10

*In re Madill Equip. Canada, et al.*,
Case No. 08-41426 (Bankr. W.D. Wash. May 1, 2008) ..........................................10

*In re Metcalfe & Mansfield Alt. Invs.*,
421 B.R. 685 (Bankr. S.D.N.Y. 2010)...................................................................26

*In re Motorycycle Tires & Accessories LLC*, et al.,
No. 19-12706 (Bankr. D. Del. Jan 22, 2020) ........................................................10

*In re Pope & Talbot, Ltd., et al.*,
Case No. 08-11933 (Bankr. D. Del. September 8, 2008) ........................................10

*In re Qimonda AG*,
433 B.R. 547 (E.D. Va. 2010)..............................................................................26

*S.E.C. v. Miller*,
    808 F.3d 623 (2d Cir. 2015).................................................................16

*In re Sherson Grp. Inc.*,
    15-11765 (Bankr. S.D.N.Y. July 27, 2015) ...........................................10

*Smith v. Dominion Bridge Corp.*,
    No. 96-7580, 1999 WL 111465 (E.D. Pa. March 2, 1999)......................11

*In re Spectra Premium Ind. Inc.*,
    No. 20-10611 (Bankr. D. Del. May 29, 2020) .......................................10

*In re Talon Sys. Inc.*, et al,
    No. 13-11811 (Bankr. D. Del. Aug. 30, 2013) ......................................10

*In re Tri-Continental Exchange Ltd.*,
    349 B.R. 627 (Bankr. E.D. Cal. 2006)............................................14, 24

*Victrix S.S., Co., S.A. v. Salen Dry Cargo A.B.*,
    825 F.2d 709 (2d Cir. 1987).................................................................19

*In re Wellpoint Sys., Inc., et al.*,
    No. 11-10423 (Bankr. D. Del. Feb. 25, 2011) ................................10, 20

*In re Xchange Tech. Group LLC, et al.*,
    No. 13-12809 (Bankr. D. Del. Nov. 25, 2013) ...............................10, 20

**STATUTES**

11 U.S.C. § 101(23) ..........................................................................9, 10, 11

11 U.S.C. § 101(24) ..........................................................................9, 11, 15

11 U.S.C. § 101(41) ......................................................................................9

11 U.S.C. §§ 101-1330 ...............................................................................11

11 U.S.C. §§ 101-1532 ...............................................................................1, 9

11 U.S.C. § 105(a) ............................................................................. *passim*

11 U.S.C. § 304(c) .....................................................................................15

11 U.S.C. § 362................................................................................2, 16, 19, 23

11 U.S.C. § 365...........................................................................................19

11 U.S.C. § 365(e) ............................................................................. *passim*

iv

11 U.S.C. § 1334 ............................................................................................................3

11 U.S.C. § 1501 ......................................................................................................3, 17

11 U.S.C. § 1501(a) .....................................................................................................27

11 U.S.C. § 1501(b)(l) ...................................................................................................9

11 U.S.C. § 1502(4) ............................................................................................9, 12, 15

11 U.S.C. § 1504 ...............................................................................................1, 4, 9, 12

11 U.S.C. § 1506 ....................................................................................15, 16, 25, 27

11 U.S.C. § 1507 ............................................................................................... *passim*

11 U.S.C. § 1507(b) ......................................................................................................25

11 U.S.C. § 1507(m) .....................................................................................................19

11 U.S.C. § 1508 ...........................................................................................................27

11 U.S.C. § 1509 .....................................................................................................9, 12

11 U.S.C. § 1515 ............................................................................................... *passim*

11 U.S.C. § 1516(a) .......................................................................................................11

11 U.S.C. § 1516(c) .......................................................................................................12

11 U.S.C. § 1517 ...............................................................................................1, 4, 19

11 U.S.C. § 1517(a) .......................................................................................................15

11 U.S.C. § 1517(b) .......................................................................................................12

11 U.S.C. § 1517(b)(1) ............................................................................................12, 15

11 U.S.C. § 1519 .............................................................................................................2

11 U.S.C. § 1520 ...............................................................................................4, 19, 23

11 U.S.C. § 1520(a)(l) ...................................................................................................19

11 U.S.C. § 1521 ............................................................................................... *passim*

11 U.S.C. § 1521(a)(5) ..................................................................................................23

11 U.S.C. § 1521(a)(7) ............................................................................................22, 24

11 U.S.C. § 1522 ........................................................................................................21, 24

28 U.S.C. § 157 ...................................................................................................................3

28 U.S.C. § 157(b)(2)(P) .....................................................................................................3

28 U.S.C. § 1334 .................................................................................................................3

28 U.S.C. § 1410(3) ............................................................................................................3

**OTHER AUTHORITIES**

H.R. Rep. 109-31(I), 109 Cong., Sess. 2005, *reprinted in* 2005 U.S.C.C.A.N. 88 .......................15

KSV Restructuring Inc. is the court-appointed receiver ("**KSV**" or the "**Receiver**") and authorized foreign representative (the "**Foreign Representative**") of G.I. Sportz Inc., Tippmann US Holdco Inc., GI Sportz Direct LLC, Tippmann Sports, LLC, Mission Less Lethal LLC, and Tippman Finance LLC (each, a "**G.I. Sportz Debtor**" and collectively, the "**G.I. Sportz Debtors**") in a proceeding (the "**Canadian Proceeding**") under Canada's *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3, (as amended, the "**BIA**"), pending before the Superior Court (Commercial Division) of the Province of Québec, District of Montréal (the "**Québec Court**").

The Receiver has commenced the above-captioned chapter 15 cases (the "**Chapter 15 Cases**") ancillary to the Canadian Proceeding with the filing of petitions on behalf of the G.I. Sportz Debtors by the Receiver in its capacity as the Foreign Representative, pursuant to sections 1504 and 1515 and the *Verified Petition for Recognition of Foreign Proceeding and Related Relief* (collectively, the "**Chapter 15 Petitions**"),[2] with accompanying documentation, pursuant to sections 1504 and 1515 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "**Bankruptcy Code**"), seeking the entry of an order (i) recognizing the Canadian Proceeding as a "foreign main proceeding" under section 1517 of the Bankruptcy Code; (ii) applying section 365(e) of the Bankruptcy Code in the Chapter 15 Cases pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code; and (iii) giving full force and effect in the United States to the Order of the Québec Court dated October 15, 2020, (including any extensions or amendments thereof authorized by the Québec Court, the "**Receivership Order**").

Contemporaneously herewith, the Receiver has filed a *Motion for Provisional Relief in Aid of Canadian Proceeding* (the "**Provisional Relief Motion**") seeking the entry of an order (i) staying execution against the G.I. Sportz Debtors' assets in the United States pursuant to

---

[2] Capitalized terms used, but not defined herein, have the meaning given to them in the Chapter 15 Petitions.

section 1519 of the Bankruptcy Code and (ii) applying sections 362 [3] and 365(e) of the Bankruptcy Code in the Chapter 15 Cases on a provisional basis pursuant to sections 105(a), 1519, and 1521 of the Bankruptcy Code.[4]

The Receiver files this Memorandum of Law in support of the Chapter 15 Petitions.

## PRELIMINARY STATEMENT

1.     The Canadian Proceeding was commenced on October 15, 2020 by the G.I. Sportz Debtors' first-ranking secured lender, GIS Debt Acquisition Partnership (the "**Partnership**" or the "**Applicant**"), to facilitate a transaction for the G.I. Sportz Debtors' businesses and assets which is contemplated to be completed under the supervision of the Québec Court and in accordance with the provisions of the BIA. Also, on October 15, 2020, the Québec Court entered the Receivership Order that, among other things, appointed the Receiver and determined that the Receiver shall serve as the foreign representative of the GI Sportz Debtors. The Receiver believes that the transaction, which will be subject to a subsequent motion to be brought by the Receiver before the Québec Court, is the best option for maximizing and preserving the value of the G.I. Sportz Debtors' assets for the benefit of the G.I. Sportz Debtors' creditors and other stakeholders.

---

[3] Upon commencement of a plenary bankruptcy proceeding, section 362 of the Bankruptcy Code automatically stays creditor action during a trustee's administration of an estate. The stay permits a fair and efficient administration and preserves creditors' interest in an orderly sale of a debtor's assets.

[4] In support of the Provisional Relief Motion, the Receiver referred the Court to (i) the Chapter 15 Petitions, (ii) the *Affidavit of Gregory Collings*, executed on October 8, 2020, appended to the *Motion for the Appointment of a Receiver* (the "**Receivership Motion**") and attesting to the truth of all facts alleged in the Receivership Motion (the "**Collings Affidavit**"), and (iii) the *Report of KSV Restructuring Inc., as Proposed Receiver of G.I. Sportz Inc., Tippmann US Holdco Inc., GI Sportz Direct LLC, Tippmann Finance LLC, Tippmann Sports, LLC, and Mission Less Lethal LLC,* dated October 9, 2020 (the "**Report**"). A copy of the Collings Affidavit and the Report are attached as **Exhibit A** and **Exhibit B** respectively to the *Declaration of Matthew B. Lunn in Support of Verified Petitions for Recognition of Foreign Proceeding and Related Relief and Motion for Provisional Relief in Aid of Canadian Proceeding* (the "**Lunn Declaration**") contemporaneously filed herewith.

2.      Chapter 15 of the Bankruptcy Code authorizes this Court to (i) recognize a foreign proceeding upon a foreign representative's proper commencement of a case and (ii) grant assistance in the United States to such foreign representative with respect to the foreign proceeding, including by providing additional assistance under section 1507 and fashioning appropriate relief pursuant to section 1521.

3.      The Chapter 15 Petitions satisfy all of the requirements set forth in section 1515 of the Bankruptcy Code.  As a BIA proceeding before the Québec Court involving companies with their centers of main interest in Canada, the Canadian Proceeding is entitled to the recognition and relief provided by chapter 15.  In addition, the application of section 365(e) of the Bankruptcy Code in these Chapter 15 Cases and the enforcement of the Receivership Order in the United States upon recognition is warranted under sections 105(a), 1507, and 1521 of the Bankruptcy Code.  The Receiver believes that the relief sought herein will best assure the fair and efficient administration of the Canadian Proceeding, in accordance with the principles underlying chapter 15 of the Bankruptcy Code.  Moreover, such relief is consistent with the relief afforded by United States courts in other ancillary chapter 15 cases involving proceedings under the BIA.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, section 1501 of the Bankruptcy Code, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue is proper in this District pursuant to 28 U.S.C. § 1410(3) because placing venue in this District will be consistent with the

interests of justice and convenience for the G.I. Sportz Debtors having regard to the relief sought by the Receiver.[5]

5.     The statutory predicates for the relief requested herein are sections 105(a), 1504, 1507, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

## FACTUAL BACKGROUND

6.     The G.I. Sportz Debtors are in the business of manufacturing and distributing paintballs, markers, and related accessories (the "**Paintball Business**").  By using 22 soft-gel encapsulation machines, the G.I. Sportz Debtors are able to produce over four billion paintballs on an annual basis—nearly four times as many as their next closest competitor. Through the Paintball Business, the G.I. Sportz Debtors serve a global customer base of over 3,000 fields, stores, and mass market channels, including Walmart, Dick's Sporting Goods, and Academy Sports & Outdoors. In addition to its paintball products, the G.I. Sportz Debtors also offer "Less Lethal" products (the "**Less Lethal Products**") under the Mission Less Lethal brand through G.I. Sportz Debtor, Mission Less Lethal LLC.  Less Lethal Products include carbon dioxide powered launchers and non-lethal rounds typically used for crowd control or other less lethal alternatives to the use of deadly force and are primarily sold to government, law enforcement agencies and private security providers (the Less Lethal Products and the Paintball Business collectively, the "**Business**").  The G.I. Sportz Debtors maintain two leased manufacturing facilities: one at the G.I. Sportz Debtors Headquarters in Montréal, Québec and the other in Fort Wayne, Indiana.  The G.I. Sportz Debtors have nine distribution centers throughout North America and Europe, as well as a distribution network including 25 third-party distribution partners.

---

[5] The Receiver consents to the entry of final orders or judgments by the Court, if the Court determines that it cannot enter final orders or judgments consistent with Article III of the Constitution absent the consent of the parties.

7.      G.I. Sportz Inc. is a corporation amalgamated and existing under the laws of Canada. G.I. Sportz Debtor Tippman US Holdco Inc. is a Delaware corporation, G.I. Sportz Debtors GI Sportz Direct LLC, Tippman Sports, LLC, and Tippmann Finance LLC, are limited liability companies organized under the laws of the State of Delaware, and G.I. Sportz Debtor, Mission Less Lethal LLC, is a limited liability company organized under the laws of the State of Indiana.[6] Fulcrum Capital Partners (Collector) V, LP ("**Fulcrum**"), an affiliate of GIS Debt Acquisition Partnership (the "**Partnership**"), is the majority shareholder of the G.I. Sportz Debtors by virtue of its 53.8% ownership interest in G.I. Sportz Inc.  The corporate headquarters of the G.I. Sportz Debtors is located at 6000 Kieran Street, Montréal, Québec, Canada H4S 2B5.

8.      The G.I. Sportz Debtors and certain non-debtor guarantors (the "**Guarantors**") are indebted to the Partnership in the principal amount of approximately USD $29,432,889 (the "**Secured Obligations**") on a secured basis pursuant to certain credit facilities under a Credit Agreement between G.I. Sportz Inc. as borrower and the Bank of Montreal ("**BMO**") as lender (the "**Credit Agreement**") and certain related security documents, guarantees, and security agreements (together with the Credit Agreement, the "**Loan Documents**") provided by the Guarantors. BMO assigned its interests under the Loan Documents to the Partnership at a substantial discount pursuant to an Assignment Agreement dated as of September 10, 2020 (the "**Assignment Agreement**"), a redacted copy of which is attached to the Collings Affidavit as **Exhibit R-1**.[7] On September 14, 2020, the Partnership demanded repayment of the loan and issued a Notice of Intention to Enforce Security pursuant to

---

[6]  A corporate organizational chart is included in the Collings Affidavit in § II(B)(10).

[7] As noted in the Collings Affidavit, an unredacted copy of the Assignment Agreement will be attached to the confidential appendix of the Report, subject to the issuance of the Sealing Order (as defined therein).

Section 244 of the BIA.  The Partnership also provided the G.I. Sportz Debtors with notice of its intent to seek the appointment of a receiver under the Civil Code of Québec (the "**Civil Code**").

9.      The G.I. Sportz Debtors are currently unable to service their obligations as they become due, including their debt obligations under the Credit Agreement.  The Business was under considerable stress prior to the emergence of the COVID-19 pandemic, having incurred losses totaling over USD $45 million since January 1, 2018, according to its year-end financial statements for the periods ending December 31, 2018 and December 31, 2019, and its year-to-date internal financial statements for the eight-month period ended August 31, 2020.

10.     As paintball is a social sport played by a large number of participants, often in teams and in relatively confined areas, the COVID-19 pandemic has had a significant negative impact on the Business due to Canadian and U.S. government policies mandating social distancing.  As a result, operations effectively ceased between March and July 2020 and losses have continued in fiscal 2020 (approximately USD $2 million for the eight month period ended August 31, 2020).  The G.I. Sportz Debtors' have only recently started to resume operations.

11.     The G.I. Sportz Debtors are in default of various covenants under the Credit Agreement, as described in greater detail in the Collings Affidavit. In addition, interest and costs continue to accrue under the Credit Agreement.  As of the date of the Report, the G.I. Sportz Debtors had approximately USD $5.4 million in cash on hand. Other than cash, the G.I. Sportz Debtors' working capital assets primarily consist of their inventory, with a book value of approximately USD $13 million, which is mostly comprised of paintball, marker, and airsoft products, as well as accounts receivable owing from various customers and retailers.  As of August 31, 2020, the book value of the G.I. Sportz Debtors' accounts receivable was approximately USD $7.5 million.

12.     Notwithstanding the defaults under the Credit Agreement, the Partnership has allowed the G.I. Sportz Debtors to continue to have access to the cash on hand to fund their business.  Without the indulgence of the Partnership to allow the G.I. Sportz Debtors to continue to use the cash, the G.I. Sportz Debtors would be unable to service the indebtedness under the Credit Agreement or obligations owed to other secured and unsecured creditors.  As a result of the continuing defaults under the Credit Agreement, the Partnership can realize on the cash at any time.

13.     Kore Outdoor (US) Inc., a wholly-owned U.S. subsidiary of Kore Outdoor Inc. (the "**Purchaser**"), has agreed to acquire the U.S.-based assets of the Business in exchange for a demand non-interest bearing note (the "**U.S. Note**") having a principal amount equal to the value of such assets; and Kore Outdoor Inc. will assume the G.I. Sportz Debtors' liability for the Secured Obligations in exchange for the transfer of the Canadian assets of the  Business and the U.S. Note (collectively, the "**Purchased Assets**" and such transaction, the "**Contemplated Transaction**").  With the necessary consents, the Purchaser will assume certain of the G.I. Sportz Debtors' contracts with its suppliers and accounts payable owing to certain suppliers. Following consummation of the Contemplated Transaction, Kore Outdoor Inc. will be the sole beneficial owner of the Purchased Assets and the Partnership will be the sole secured lender to Kore Outdoor Inc.  The Partnership has agreed to provide further funding to facilitate the continued operation of the Business after the completion of the Contemplated Transaction.  The Contemplated Transaction will result in the Business continuing to operate as a going concern following its completion, with minimal to no interruptions to business operations and the preservation of hundreds of jobs.  A significant portion of the unsecured vendor obligations are contemplated to be assumed by the Purchaser.

14.     The Receiver, the Purchaser, and the Partnership are in the final stages of settling the terms of an asset purchase agreement (the "**APA**") for the sale of substantially all of the assets of the G.I. Sportz Debtors to the Purchaser, which can only be executed by the Receiver upon (i) the issuance of the Receivership Order, (ii) the appointment of KSV as Receiver by the Québec Court, (iii) the issuance of the Recognition Order by this Court, and (iv) approval of the APA by the Québec Court, which is contemplated to be sought immediately following this hearing.

15.     On October 15, 2020, the Québec Court heard an application by the Partnership under the BIA, placing the G.I. Sportz Debtors into receivership and seeking, among other things, the appointment of KSV as receiver to preserve, protect, and sell the business and assets of the G.I. Sportz Debtors as the G.I. Sportz Debtors have no ability to repay or refinance the Secured Obligations.  Subsequently, the Québec Court entered the Receivership Order on October 15, 2020.

16.     On the date hereof (the "**Petition Date**"), the Receiver commenced these Chapter 15 Cases by filing, among other things, the Chapter 15 Petitions, seeking recognition by this Court of the Canadian Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code (the "**U.S. Proceedings**").  Immediately following recongition of the U.S. Proceedings by this Court, the Receiver intends to bring a motion before the Québec Court recommending that it approve the Contemplated Transaction.  If the Québec Court issues an order approving the Contemplated Transaction, the Receiver intends to immediately seek recognition of that order by this Court.

17.     For a detailed description of the G.I. Sportz Debtors' business, corporate organization, capital structure, and circumstances leading to the Canadian Proceeding, the Court

is respectfully referred to (i) the Collings Affidavit and (ii) the Report, both of which were submitted to the Québec Court, and which are attached as **Exhibits A** and **B** respectively, to the Lunn Declaration.

## ARGUMENT

**I.      The Canadian Proceeding Is Entitled to Recognition as a Foreign Main Proceeding**

18.      Chapter 15 of the Bankruptcy Code applies where a foreign representative seeks the assistance of a United States bankruptcy court in connection with a foreign proceeding. *See* 11 U.S.C. § 1501(b)(l).  The Canadian Proceeding is entitled to recognition as a "foreign main proceeding" under chapter 15 of the Bankruptcy Code because, among other things:

> (A)    The Canadian Proceeding is (i) a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code and (ii) a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code because the Canadian Proceeding is pending in a jurisdiction where each of the G.I. Sportz Debtors maintains its center of main interests;

> (B)    The Receiver is a "person" within the meaning of section 101(41) of the Bankruptcy Code and a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code;

> (C)    The Chapter 15 Petitions were filed in accordance with sections 1504 and 1509 of the Bankruptcy Code; and

> (D)    The Chapter 15 Petitions meet the requirements of sections 1504 and 1515 of the Bankruptcy Code.

**A.      These Chapter 15 Cases Concern a "Foreign Proceeding"**

19.      The Canadian Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.  That section provides, in pertinent part, as follows:

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

20.    The Canadian Proceeding is a receivership proceeding brought under the BIA, subject to the supervision of the Québec Court and commenced to allow the Receiver to sell the G.I. Sportz' Debtors' assets to maximize the value of the G.I. Sportz Debtors' business for its creditors and other stakeholders.  As such, the Canadian Proceeding falls squarely within the definition contained in section 101(23).  Since the enactment of chapter 15, other courts have granted recognition to Canadian receivership proceedings under the BIA.  *See In re Arxx Corp., et al.*, No. 13-13313 (Bankr. D. Del. Jan 31, 2014) (recognizing BIA receivership as a foreign main proceeding); *In re Talon Sys. Inc.*, et al, No. 13-11811 (Bankr. D. Del. Aug. 30, 2013) (same); *In re Wellpoint Sys., Inc., et al.*, No. 11-10423 (Bankr. D. Del. Feb. 25, 2011) (same); *In re EarthRenew IP Holdings LLC, et al.*, No. 10-13363 (Bankr. D. Del. Nov. 10, 2010) (same); *In re Innua Canada Ltd.*, Case No. 09-16362 (Bankr. D.N.J. Apr. 15, 2009) (same); *In re Pope & Talbot, Ltd., et al.*, Case No. 08-11933 (Bankr. D. Del. September 8, 2008) (same); *In re Madill Equip. Canada, et al.*, Case No. 08-41426 (Bankr. W.D. Wash. May 1, 2008) (same); *In re Xchange Tech. Group LLC, et al.*, No. 13-12809 (Bankr. D. Del. Nov. 25, 2013) (recognizing BIA receivership as a foreign nonmain proceeding).  More generally, Canadian insolvency proceedings are frequently granted recognition by courts in the United States pursuant to chapter 15.  *See, e.g.*, *In re CDS U.S. Holdings, Inc.*, et al., No. 20-11719 (Bankr. D. Del. Aug. 11 2020); *In re JustFly Corp.*, et al., No. 20-11207 (Bankr. D. Del. June 25, 2020); *In re The Aldo Grp. Inc.*, et al., No. 20-11062 (Bankr. D. Del. June 3, 2020); *In re Spectra Premium Ind. Inc.*, No. 20-10611 (Bankr. D. Del. May 29, 2020); *In re Motorycycle Tires & Accessories LLC*, et al., No. 19-12706 (Bankr. D. Del. Jan 22, 2020); *In re Sherson Grp. Inc.*, 15-11765 (Bankr. S.D.N.Y.

July 27, 2015).   Accordingly, the Chapter 15 Cases concern a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.[8]

**B.      The Chapter 15 Cases Were Commenced by a "Foreign Representative"**

21.      The Chapter 15 Cases were commenced by the Receiver, the duly-authorized, court-appointed "foreign representative" of the G.I. Sportz Debtors within the meaning of section 101(24) of the Bankruptcy Code. That section defines a "foreign representative," in pertinent part, as a "person or body . . . authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."   11 U.S.C. § 101(24). The Receivership Order provides that the Receiver shall be authorized to apply as it may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America or elsewhere, for orders which aid and complement the Order and any subsequent orders of this Court and, without limitation to the foregoing, an order under Chapter 15 of the Bankruptcy Code, for which the Receiver shall be the foreign representative of each of the Debtors. The Court is entitled to presume that the representative identified in the Receivership Order is a "foreign representative" under section 1516(a) of the Bankruptcy Code. *See* 11 U.S.C. § 1516(a).   Accordingly, the Receiver is a proper "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code.

**C.      These Cases Were Properly Commenced Under Chapter 15**

---

[8] Further, under former section 304 of the Bankruptcy Code, the statutory predecessor to chapter 15, Canadian proceedings, including insolvency proceedings, were regularly granted comity.  *See, e.g., Smith v. Dominion Bridge Corp.,* No. 96-7580, 1999 WL 111465, at *3 (E.D. Pa. March 2, 1999) ("As a sister common law jurisdiction, courts have consistently extended comity to Canadian Bankruptcy proceedings."); *In re Davis*, 191 B.R. 577, 587 (Bankr. S.D.N.Y. 1996) ("Courts in the United States uniformly grant comity to Canadian proceedings"); *Cornfeld v. Investors Overseas Servs. Ltd.,* 471 F. Supp. 1255, 1260-62 (S.D.N.Y. 1979), *aff'd,* 614 F.2d 1286 (2d Cir. 1979); *Caddel v. Clairton Corp.*, 105 B.R. 366 (N.D. Tex. 1989).

22.     The Receiver duly and properly commenced the Chapter 15 Cases, as required by sections 1504 and 1509 of the Bankruptcy Code, by filing the Chapter 15 Petitions for recognition of a foreign proceeding under section 1515(a) accompanied by all documents and information required by sections 1515(b) and (c).  *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code."), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008). Because the Receiver has satisfied the requirements set forth in section 1515 of the Bankruptcy Code, it has properly commenced these Chapter 15 Cases.

**D.    The Canadian Proceeding Should Be Recognized as a Foreign Main Proceeding**

23.     The Canadian Proceeding should be recognized as a "foreign main proceeding," as defined in section 1502(4) of the Bankruptcy Code.  Under section 1517(b) of the Bankruptcy Code, a foreign proceeding shall be recognized as a foreign main proceeding if it is pending in a country where the debtor has the center of its main interests.  *See* 11 U.S.C. § 1517(b)(1).  While the Bankruptcy Code does not define "center of main interests," it does provide that, absent evidence to the contrary, a debtor's headquarters is presumed to be the center of the debtor's main interests.  *See* 11 U.S.C. § 1516(c); *In re ABC Learning Centres Ltd.*, 445 B.R. 318, 333 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013) ("Courts have found that a debtor's registered jurisdiction is its [center of main interests] where no objection was raised or evidence presented rebutting the section 1516 presumption.").  Additionally, in *Bear Stearns*, 374 B.R. at 128, Judge Lifland suggested that:

> Various factors could be relevant to such a determination, including:  the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the

debtor's primary assets; the location of the majority of the debtor's creditors or a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes.

(citing *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007)).

24.    The center of main interests for the G.I. Sportz Debtors' enterprise is in Montréal, Québec, Canada.    The G.I. Sportz Debtors are organized under centralized management and subject to combined cash management and accounting functions, all based in and overseen from the G.I. Sportz Debtors' headquarters in Québec.    *See* Report, § 4.0.    The following (non-exhaustive) reasons inform the Receiver's view that Montréal is the center of main interests for the G.I. Sportz Debtors:

(A)    Essentially all of the strategic decision-making and management functions of G.I. Sportz occur in Montréal. The North American operations, including those of Tippmann US Holdco Inc., GI Sportz Direct LLC, Tippmann Finance LLC, Tippmann Sports, LLC, and Mission Less Lethal LLC are managed from the office of G.I. Sportz in Montréal, Québec.

(B)    G.I. Sportz has entered into the majority of the G.I. Sportz Debtors' significant contracts and agreements, including the Credit Agreement, and has guaranteed the real property leases of the G.I. Sportz Debtors which are located in the United States. While the CEO of the G.I. Sportz Debtors is a U.S. resident living in Florida, he often attends meetings at the head office, including Board meetings. Prior to the COVID-19 pandemic, the CEO spent approximately one-half of each month at the Montréal head office. The CEO also maintains an office at the head office.

(C)    The majority of the principals, directors, and officers of each of the G.I. Sportz Debtors, including Tippmann US Holdco Inc., GI Sportz Direct LLC, Tippmann Finance LLC, Tippmann Sports, LLC, and Mission Less Lethal LLC, are Canadian residents, including the majority of the boards of directors.

(D)    Meetings of the Boards of Directors for each of the G.I. Sportz Debtors are typically convened or chaired in Canada.

(E)    As of the date of the Report, G.I. Sportz is the principal obligor on

all of the G.I. Sportz Debtors' secured debt.

(F)     The principal secured creditor of the G.I. Sportz Debtors, the Partnership, is Canadian.

(G)     All of the paintball inventory acquired by Tippmann US Holdco Inc., GI Sportz Direct LLC, Tippmann Finance LLC, Tippmann Sports, LLC, and Mission Less Lethal LLC, is manufactured by G.I. Sportz in Canada. Paintball sales account for 50% of the G.I. Sportz Debtors' revenue.

(H)     The majority of the G.I. Sportz Debtors' administrative functions, including general accounting, financial reporting, budgeting, and cash management, is performed by G.I. Sportz in Canada.

(I)     The G.I. Sportz Debtors' human resource function is centralized and managed by G.I. Sportz in Canada.

(J)     The G.I. Sportz Debtors' main bank accounts are located at a BMO branch in Montréal, Québec. Tippmann US Holdco Inc., GI Sportz Direct LLC, Tippmann Finance LLC, Tippmann Sports, LLC, and Mission Less Lethal LLC all have property and/or bank accounts in Québec; and

(K)     The funding of Tippmann US Holdco Inc., GI Sportz Direct LLC, Tippmann Finance LLC, Tippmann Sports, LLC and Mission Less Lethal LLC is done from Canada through intercompany loan arrangements.

*See Id.*    Furthermore, the G.I. Sportz' Debtors' previous major secured lender (BMO) is headquartered in Québec, the G.I. Sportz' Debtors' current first-ranking secured lender (the Partnership) was created in Ontario, and the Credit Agreement to which G.I. Sportz and the Guarantors are a party is governed by Québec law. In addition, the shares of the subsidiaries of G.I. Sportz which were pledged pursuant to the Loan Documents are similarly located in Québec and Ontario. *See* Collings Affidavit, which is attached to the Lunn Declaration as **Exhibit A**.

25.    Thus, based on the facts presented in this instance, Québec, Canada should be found to be the Debtors' center of main interests.  *See In re Tri-Continental Exchange Ltd.*, 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006) (noting that a debtor's center of main interests is the

"place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties"); *Bear Stearns*, 374 B.R. at 127 (equating a company's principal place of business to its center of main interests).

26.    As described above, nearly all of the Debtors' corporate business is conducted from Québec.  As such, Québec is "ascertainable by third parties" as the Debtors' center of main interests.  *See Bear Stearns*, 374 B.R. at 130.  Accordingly, given that the Canadian Proceeding is pending in Québec, which is the Debtors' center of main interests, the Canadian Proceeding should be recognized as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code.

**E.    The Receiver Is Entitled to an Order Granting Recognition of the Canadian Proceeding as a Foreign Main Proceeding**

27.    As evidenced above, the Canadian Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code, the Receiver applying for recognition is a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code, and the Chapter 15 Petitions meet the requirements of section 1515 of the Bankruptcy Code.  Section 1517(a) of the Bankruptcy Code provides, in pertinent part, that "[s]ubject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if - (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515."  11 U.S.C. §1517(a); *see also* H.R. Rep. 109-31(I), 109 Cong., Sess. 2005, *reprinted in* 2005 U.S.C.C.A.N. 88, 169 at 175 (noting, in enacting chapter 15, that the "decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304(c) of the Bankruptcy Code.

The requirements of this section, which incorporates the definitions in section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition").

28.    Recognition of the Canadian Proceeding as a foreign main proceeding is consistent with the provisions of section 1506 of the Bankruptcy Code.  That section provides that nothing in chapter 15 shall prevent the court from refusing to take an action otherwise required by chapter 15 if such action would be manifestly contrary to the public policy of the United States.  *See* 11 U.S.C. § 1506.  The relief requested by the Receiver is not manifestly contrary to, but rather is consistent with, United States public policy.

29.    It is well established that one of the core purposes of bankruptcy is the efficient reorganization of the debtor's estate, "unimpeded by uncoordinated proceedings in other arenas." *S.E.C. v. Miller*, 808 F.3d 623, 630 (2d Cir. 2015).  The automatic stay of section 362 of the Bankruptcy Code serves this purpose "by enabling the bankruptcy court to centralize all disputes concerning property of the debtor's estate."  *Id.*  Indeed, as one court has noted, "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction."  *Cornfeld v. Invs. Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (recognizing that Canadian liquidation proceeding would not violate laws or public policy of New York or the United States).

30.    The Canadian Proceeding is also similar to cases under chapters 7 and 11 of the Bankruptcy Code in that it provides for a centralized process: (i) to assert and resolve claims against an estate and (ii) that ultimately will result in distributions to creditors. Recognizing the Canadian Proceeding and enjoining certain actions or proceedings with respect to the G.I. Sportz Debtors and their assets will assist the orderly administration of the G.I. Sportz Debtors' assets.  Such orderly administration is demonstrably consistent with the public policy of

the United States, as embodied in the Bankruptcy Code.  Absent the relief requested, there is a

possibility that the assets of the G.I. Sportz Debtors in the United States would be subject to

attachments and/or post-judgment enforcement proceedings brought by individual creditors,

which could result in (i) the G.I. Sportz Debtors having to expend unnecessary enforcement costs

in multiple jurisdictions or (ii) the piecemeal disposition of the G.I. Sportz Debtors' assets that

would undermine the Canadian Proceeding and prevent the equal treatment of similarly situated

creditors that the Bankruptcy Code seeks to promote.

31.     Further, recognition of the Canadian Proceeding would be consistent with

the purpose of chapter 15 and its predicate, the UNCITRAL Model Law on Cross Border

Insolvency.  Section 1501 of the Bankruptcy Code provides, in pertinent part that:

> The purpose of this chapter is to incorporate the Model Law on Cross-
> Border Insolvency so as to provide effective mechanisms for dealing with
> cases of cross-border insolvency with the objectives of-
>
> (1)     cooperation between-
>
> * * *
>
> (2)     the courts and other competent authorities of foreign countries
>         involved in cross-border insolvency cases;
>
> * * *
>
> (3)     fair and efficient administration of cross-border insolvencies that
>         protects the interests of all creditors, and other interested entities,
>         including the debtor; [and]
>
> (4)     protection and maximization of the value of the debtor's assets.

11 U.S.C. § 1501.

32.     The relief requested by the Foreign Representative is consistent with, and

critical to effectuate, the objectives of chapter 15 for several reasons.  First, recognition of the

Canadian Proceeding would foster cooperation between the Québec Court and this Court in

respect of the administration of the G.I. Sportz Debtors' estates.  By granting recognition to the Canadian Proceeding and providing certain injunctive relief, this Court can effectively assist the Québec Court in the orderly administration of the G.I. Sportz Debtors' assets.  The G.I. Sportz Debtors' creditors would generally be enjoined from commencing or continuing actions against the G.I. Sportz Debtors and their assets, thereby assisting in the uniform resolution of claims against the G.I. Sportz Debtors.

33.     Second, recognition of the Canadian Proceeding would promote the fair and efficient administration of a cross-border reorganization procedure that protects the interests of all creditors and interested entities.  By recognizing the Canadian Proceeding and providing the injunctive relief requested, the process of resolving claims against the G.I. Sportz Debtors would be centralized in Canada.  Creditors would be required to assert their claims in accordance with Canadian law in the Canadian Proceeding and any disputes would be subject to the uniform jurisdiction of one tribunal, the Québec Court.  If creditors' actions with respect to the G.I. Sportz Debtors' United States assets are not effectively stayed, the uniform and orderly administration of the G.I. Sportz Debtors in the Canadian Proceeding will be jeopardized.

34.     Finally, the relief requested would protect the G.I. Sportz Debtors' assets located in the United States.  Absent such relief, assets of the G.I. Sportz Debtors may be depleted and available resources may be expended unnecessarily to defend collection and other actions brought in the United States.  Accordingly, the relief requested would further the objectives of chapter 15 by assisting the orderly administration of the G.I. Sportz Debtors in the Canadian Proceeding.

35.     Accordingly, the Receiver respectfully submits that the Court should enter an Order recognizing the Canadian Proceeding as a "foreign main proceeding" pursuant to section 1517 of the Bankruptcy Code.

## II.    The Receiver Is Entitled to an Order Applying Section 365 of the Bankruptcy Code and Enforcing the Receivership Order

36.     Upon recognition of the Canadian Proceeding as a foreign main proceeding, certain relief is automatically granted as a matter of right, including a stay that enjoins actions against and otherwise protects the G.I. Sportz Debtors and their assets.  *See* 11 U.S.C. § 1520.  In particular, upon the Court's recognition of the Canadian Proceeding as foreign main proceeding, section 1520(a)(l) of the Bankruptcy Code triggers the automatic stay provisions of section 362 of the Bankruptcy Code with respect to the G.I. Sportz Debtors.

37.     Additionally, in connection with the recognition of the Canadian Proceeding, the Receiver further requests entry of an order (i) applying section 365(e) of the Bankruptcy Code in the Chapter 15 Cases and (ii) giving full force and effect to the Receivership Order in the United States.  The Receiver respectfully submits that such relief is warranted under sections 105(a), 1507, and 1521 of the Bankruptcy Code and the general principles of comity that underpin chapter 15.

### A.    The Requested Relief Is Warranted Under Sections 105(a), 1507(m), and 1521 of the Bankruptcy Code

38.     Chapter 15 of the Bankruptcy Code embodies longstanding principles of international comity and cooperation that weigh heavily in favor of the enforcement of the Receivership Order in the United States.  *See Victrix S.S., Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987) ("American courts have long recognized the need to extend comity to foreign bankruptcy proceedings.").  "A central tenet of Chapter 15 is the importance of comity in cross-border insolvency proceedings." *In re Cozumel Caribe S.A. de C.V.*, 482 B.R. 96, 114-

15 (Bankr. S.D.N.Y. 2012); *In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009) (stating that chapter 15 "specifically contemplates that the court should be guided by principles of comity and cooperation with foreign courts in deciding whether to grant the foreign representative additional post-recognition relief."); *Ad Hoc Group of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*, 701 F.3d 1031, 1044 (5th Cir. 2012) ("Central to Chapter 15 is comity."); *In re Fairfield Sentry Ltd.*, 484 B.R. 615, 626 (Bankr. S.D.N.Y. 2013) ("Chapter 15 emanates from and was designed around this central concept of comity, as evidenced by its primary purpose and deferential framework for international judicial cooperation.").  As courts have recognized, while comity does not demand categorical deference to a foreign proceeding, under these principles "a foreign judgment should generally be accorded comity if its proceedings are 'fair and impartial.'"  *Collins v. Oilsands Quest, Inc.*, 484 B.R. 593 (S.D.N.Y. 2012) (citing *In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333, 336 (S.D.N.Y. 2006)).

39.    Further, "when the foreign proceeding is in a sister common law jurisdiction with procedures akin to our own, comity should be extended with less hesitation, there being fewer concerns over the procedural safeguards employed in those foreign proceedings."  *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd*., *Inc.*, 238 B.R. 25, 67 (Bankr. S.D.N.Y. 1999) (internal quotations and citations omitted), *aff'd*, 238 B.R. 699 (S.D.N.Y. 2002). Bankruptcy courts hearing chapter 15 cases have, therefore, granted comity to orders issued in BIA receivership proceedings in the United States.  *See In re Arxx Corp.*, et al., No. No. 13-13313 (Bankr. D. Del. Jan 31, 2014) (giving full force and effect to a receivership Order of the Canadian Court in the United States); *In re Xchange Tech. Group LLC, et al.,* No. 13-12809 (Bankr. D. Del. Nov. 25, 2013); *In re Wellpoint Sys., Inc., et al.*, No. 11-10423 (Bankr. D. Del. Feb. 25, 2011) (same); *In re EarthRenew IP Holdings LLC, et al.*, No. 10-13363 (Bankr. D. Del.

Nov. 10, 2010) (same); *In re Innua Canada Ltd.*, Case No. 09-16362 (Bankr. D.N.J. May 19, 2009) (giving full force and effect to a vesting order of a Canadian court and approving the sale of assets in the United States).

40.     In addition to general principles of comity, sections 1507 and 1521 of the Bankruptcy Code provide specific bases for a court overseeing a chapter 15 proceeding to provide additional relief to a foreign representative following the recognition of a foreign proceeding.  Section 1521 allows a court to grant "any appropriate relief," including "any relief that may be available to a trustee," subject to certain limitations and provided that "the interests of the creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. §§ 1521, 1522.  Section 1507 empowers a court to provide "additional assistance" to a foreign representative provided that such assistance, "consistent with the principles of comity," will reasonably assure: (1) just treatment of all holders of claims against or interests in the debtor's property; (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding; (3) prevention of preferential or fraudulent dispositions of property of the debtor; (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns. *See* 11 U.S.C. § 1507.

41.     In *In re Vitro*, the Fifth Circuit Court of Appeals considered the relationship between sections 1521 and 1507 of the Bankruptcy Code and established an analytical framework for considering requests for relief under chapter 15.  *Vitro*, 701 F.3d at 1056.  Under the *Vitro* analysis, a court should initially consider whether the requested relief falls under one of the explicit provisions of section 1521.  *Id.*  If it does not, then the court must

consider whether the requested relief constitutes "appropriate relief" under section 1521(a), which the *Vitro* court held to be coextensive with relief provided under former section 304 of the Bankruptcy Code, the precursor to chapter 15, or otherwise available in the United States.  *Id*. Finally, if the requested relief goes beyond the relief previously available under section 304 or currently available under United States law, then a court must consider 1507, which allows for relief "more extraordinary" than that provided under section 1521.  *Id*. at 1057 (internal citations omitted).  The relief requested herein is warranted under the above analysis.

> **B.      The Application of Section 365(e) of the Bankruptcy Code Is Warranted Under Section 1521 of the Bankruptcy Code**

42.      Section 1521(a), which has been held to be coextensive with relief otherwise available under the laws of the United States, allows the Court to apply section 365(e) of the Bankruptcy Code in the Chapter 15 Cases as "appropriate relief" and, in particular, as relief that is available to a trustee in plenary cases under the Bankruptcy Code.  *See* 11 U.S.C. § 1521(a)(7).  Section 365(e) of the Bankruptcy Code is a fundamental protection under the Bankruptcy Code and preserves a debtor's valuable commercial relationships by preventing counterparties from terminating their contracts as a result of the debtor's insolvency.  *See* 11 U.S.C. § 365(e).

43.      The concerns that drive the application of this provision in plenary cases apply with equal force here, as various vendors, service providers, landlords, and other creditors may attempt to terminate the G.I. Sportz Debtors' existing contractual relationships, irreparably harming the G.I. Sportz Debtors' enterprise value and undermining the purpose of the Canadian Proceeding, to the detriment of all stakeholders.  While section 365(e) does not apply as of right upon the recognition of a proceeding as a foreign main proceeding, the Receiver believes that such relief is warranted in the Chapter 15 Cases.

C.    **The Enforcement of the Receivership Order Is Warranted Under Section 1521 of the Bankruptcy Code**

44.    Among other things, the Receivership Order (i) appoints the Receiver and authorizes the Receiver to manage and operate the property of the G.I. Sportz Debtors; (ii) stays the commencement or continuation of any proceedings or enforcement processes against the G.I. Sportz Debtors, their property, and the Receiver; (iii) provides for the Receiver to borrow operating funds from the Partnership, if required;[9] and (iv) stays and suspends the exercise of all rights and remedies against the G.I. Sportz Debtors, the Receiver or affecting the property of the G.I. Sportz Debtors without the written consent of the Receiver or leave of the Québec Court.  In addition to providing similar protections under section 362 of the Bankruptcy Code pursuant to section 1520 of the Bankruptcy Code upon recognition of a foreign main proceeding, chapter 15 of the Bankruptcy allows the Court to give full force and effect in the United States to the Receivership Order, as the relief granted by the Québec Court would be available in these circumstances under applicable United States law.  *See* 11 U.S.C. §1521; *Vitro*, 701 F.3d at 1056.

45.    Section 1521(a)(5) of the Bankruptcy Code expressly permits the Court to entrust the administration or realization of all or part of a debtor's assets within the territorial jurisdiction of the United States to a foreign representative such as the Receiver, and sections 1521(a)(1) and (2) allow the Court to stay the commencement or continuation of actions

---

[9] As explained in greater detail in the Collings Affidavit, the Partnership has agreed to a court-ordered charge (the "**Receiver's Charge**") in favor of the Receiver (if appointed) and its counsel, as security for payment of their respective fees and disbursements, in each case at their standard rate and charges, which shall form a first charge on the property of the G.I. Sportz Debtors in priority to the claims of the G.I. Sportz Debtors' secured creditors. While there is currently sufficient cash on hand to fund operations during the receivership, if necessary, the Partnership has agreed to provide the Receiver with financing to fund the receivership, which advances would be secured by a court-ordered charge (the "**Receiver's Borrowings Charge**") which would be subject only to the Receiver's Charge and any priority payables (i.e., obligations of the G.I. Sportz Debtors secured by statutory deemed trusts or liens ranking priority to the Partnership's existing security) and evidenced through the issuance of receiver certificates by the Receiver. *See* Collings Affidavit, ¶¶ 78-79.

concerning the G.I. Sportz Debtors' assets, rights, obligations, or liabilities.  More generally, the relief granted in the Receivership Order is consistent with relief available to trustees in plenary proceedings under the Bankruptcy Code, and may therefore be approved as "additional relief" under section 1521(a)(7).

46.     The enforcement of the Receivership Order also satisfies the requirements of section 1522 of the Bankruptcy Code, because the interests of creditors and other interested entities, including the G.I. Sportz Debtors themselves, are sufficiently protected thereunder.  *See In re Tri-Continental Exchange Ltd.*, 349 B.R. 627, 637 (Bankr. E.D. Cal. 2006) ("Standards that inform the analysis of § 1522 protective measures in connection with discretionary relief emphasize the need to tailor relief and conditions so as to balance the relief granted to the foreign representative and the interests of those affected by such relief, without unduly favoring one group of creditors over another.").  The relief provided in the Receivership Order is intended to protect the G.I. Sportz Debtors during the pendency of the Canadian Proceeding in order to facilitate a sale of the G.I. Sportz Debtors' businesses and assets and salvage enterprise value for the benefit of the G.I. Sportz Debtors' stakeholders

**D.     The Enforcement of the Receivership Order Is Warranted Under Section 1507 of the Bankruptcy Code**

47.     If the Court concludes that the enforcement of the Receivership Order is not warranted under section 1521 of the Bankruptcy Code, the Receiver respectfully submits that such relief is warranted as "additional assistance" under section 1507, which empowers a court to grant relief in aid of a foreign proceeding beyond what might be available in a plenary case provided that certain considerations are satisfied.  *Vitro*, 701 F.3d at 1056.  The Receiver submits that enforcing the Receivership Order is entirely consistent with the relevant considerations specified in section 1507:

(A)  The Canadian Proceeding ensures the just treatment of all holders of claims against or interests in the G.I. Sportz Debtors' property, as such property will be distributed in accordance with the BIA under the supervision of the Québec Court;

(B)  There is no allegation or evidence that any preferential or fraudulent disposition of the G.I. Sportz Debtors' property is being made under the Receivership Order; and

(C)  The Receivership Order will result in the distribution of the proceeds of the G.I. Sportz Debtors' property consistent with the order prescribed by the Bankruptcy Code.

*See* 11 U.S.C. § 1507(b)

48.    Further, as the Fifth Circuit observed in *Vitro*, relief granted in foreign insolvency proceedings may be enforced in the United States through section 1507 if it can be demonstrated that the requested relief "is substantially in accordance with the circumstances that would warrant such relief in the United States." *Vitro*, 701 F.3d at 1069.  By the Receivership Order, the Québec Court has approved relief that is consistent with relief available in plenary bankruptcy proceedings.  Accordingly, the Receiver respectfully submits that this Court is entitled to enforce the Receivership Order in the United States pursuant to section 1507 of the Bankruptcy Code.

### E.    The Requested Relief Does Not Violate Section 1506 of the Bankruptcy Code

49.    Finally, the application of section 365(e) of the Bankruptcy Code and enforcement of the Receivership Order in the Chapter 15 Cases does not violate section 1506 of the Bankruptcy Code, which provides that a court may refuse to take an action in a chapter 15 case if such "action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.  Courts have interpreted the statute as a narrow exception that should be applied sparingly.  *In re ENNIA Caribe Holding N.V.*, 594 B.R. 631, 640 (Bankr. S.D.N.Y. 2018).  The legislative history of section 1506 makes clear that the public policy exception

should be "narrowly interpreted" and is restricted to "the most fundamental policies of the United States." *In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333, 336 (S.D.N.Y. 2006) (citing H.R. REP. NO. 109-31(I), at 109, *as reprinted in* 2005 U.S.C.C.A.N. 88, 172). *See also In re Gold & Honey, Ltd.*, 410 B.R. 357 (Bankr. E.D.N.Y. 2009). *Cf. Hilton v. Guyot*, 159 U.S. 113 (1895) (holding that a foreign judgment should generally be accorded comity if "its proceedings are according to the course of a civilized jurisprudence"). Accordingly, courts have held that the public policy exception "should be interpreted restrictively" and that "a foreign judgment should generally be accorded comity if its proceedings are . . . fair and impartial." *In re Ephedra Prods. Liab. Litig.*, 349 B.R. at 90-91 (internal citations omitted) (affirming foreign judgment issued in the absence of a jury trial). *See also In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010) (noting that "this public policy exception is narrowly construed"); *Iida v. Kitahara (In re Iida)*, 377 B.R. 243 (B.A.P. 9th Cir. 2007) ("This public policy exception is narrow and, by virtue of the qualifier 'manifestly,' is limited only to the most fundamental policies of the United States."). Courts engaging in this analysis examine (i) whether the foreign proceeding was procedurally unfair and (ii) whether the application of foreign law would "'severely impinge the value and import' of a U.S. statutory or constitutional right, such that granting comity would 'severely hinder United States bankruptcy courts' abilities to carry out . . . the most fundamental policies and purposes' of these rights." *In re Qimonda AG*, 433 B.R. 547, 569-9 (E.D. Va. 2010) (citing *Gold & Honey, Ltd.*, 410 B.R. at 372).

50.    In the instant matter, the Receiver requests (i) the application of section 365(e) of the Bankruptcy Code in the Chapter 15 Cases and (ii) the enforcement of the Receivership Order in the United States. It cannot be contended that applying section 365(e) of the Bankruptcy Code in the Chapter 15 Cases would violate the public policy of the United

States, as such relief is automatic in plenary bankruptcy proceedings.  Similarly, the enforcement of the Receivership Order would not violate the public policy of the United States, because, as discussed above, the Receivership Order authorizes relief that is consistent with relief available in plenary proceedings under the Bankruptcy Code.

51.     Finally, through entry of the Receivership Order, the Québec Court has thus requested the assistance and cooperation of courts in the United States in giving effect to the Receivership Order.  In the absence of any public policy concerns, such request should be granted on the basis of comity and sections 1507 and 1521 of the Bankruptcy Code.

52.     Accordingly, the Receiver respectfully submits that this Court should grant the G.I. Sportz Debtors the protections of section 365(e) of the Bankruptcy Code and give full force and effect to the Receivership Order in the United States upon recognition of the Canadian Proceeding.  Such relief would not be manifestly contrary to the public policy of the United States, as prohibited in section 1506.  Indeed, granting such recognition furthers the United States public policy respecting foreign proceedings as articulated, among other ways, through the objectives set forth in sections 1501(a) and 1508 of the Bankruptcy Code.

*[Remainder of Page Intentionally Left Blank]*

## **CONCLUSION**

WHEREFORE, the Receiver respectfully requests that this Court grant the relief requested in the Chapter 15 Petitions, and such other and further relief as may be just and proper.

Dated: October 16, 2020　　　　YOUNG CONAWAY STARGATT & TAYLOR, LLP
　　　　Wilmington, Delaware

　　　　　　　　　　　　　　*/s/ Matthew B. Lunn*
　　　　　　　　　　　　　　Michael R. Nestor (No. 3526)
　　　　　　　　　　　　　　Matthew B. Lunn (No. 4119)
　　　　　　　　　　　　　　Rodney Square
　　　　　　　　　　　　　　1000 North King Street
　　　　　　　　　　　　　　Wilmington, Delaware 19801
　　　　　　　　　　　　　　Telephone:  (302) 571-6600
　　　　　　　　　　　　　　Facsimile:   (302) 571-1253
　　　　　　　　　　　　　　Emails: mnestor@ycst.com
　　　　　　　　　　　　　　　　　　 mlunn@ycst.com

　　　　　　　　　　　　　　*Attorneys for KSV Restructuring Inc., as Receiver and*
　　　　　　　　　　　　　　*Foreign Representative of the G.I. Sportz Debtors*