## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 15 |
| G.I. SPORTZ INC., *et al*,[1] | Case No.  20-12610 (___) |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

## MOTION FOR PROVISIONAL RELIEF
## IN AID OF THE CANADIAN PROCEEDING

KSV Restructuring Inc. is the court-appointed receiver ("**KSV**" or the "**Receiver**") and authorized foreign representative (the "**Foreign Representative**") of G.I. Sportz Inc., Tippmann US Holdco Inc., GI Sportz Direct LLC, Tippmann Sports, LLC, Mission Less Lethal LLC, and Tippmann Finance LLC (each, a "**G.I. Sportz Debtor**" and collectively, the "**G.I. Sportz Debtors**") in a proceeding (the "**Canadian Proceeding**") under Canada's *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3 (as amended, the "**BIA**"), pending before the Superior Court (Commercial Division) of the Province of Québec, District of Montréal (the "**Québec Court**").

The Receiver has commenced these chapter 15 cases (these "**Chapter 15 Cases**") ancillary to the Canadian Proceeding with the filing, concurrently herewith, of petitions on behalf of the G.I. Sportz Debtors by the Receiver in its capacity as the Foreign Representative, pursuant to sections 1504 and 1515 and the *Verified Petition for Recognition of Foreign Proceeding and Related Relief* and the *Motion for Provisional Relief in Aid of Canadian*

---

[1] The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, follow in parentheses: G.I. Sportz Inc. (8551), Tippmann US Holdco Inc. (5037), GI Sportz Direct LLC (5359), Tippmann Sports, LLC (0385), Mission Less Lethal LLC (4604), and Tippmann Finance LLC (n/a).  The G.I. Sportz Debtors' executive headquarters is located at 6000 Kieran Street, Montréal, Québec, Canada H4S 2B5.

*Proceeding* (collectively, the "**Chapter 15 Petitions**"), with accompanying documentation, pursuant to sections 1504 and 1515 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "**Bankruptcy Code**").

By this motion (the "**Motion**"), the Receiver requests entry of an order (the "**Provisional Order**") (i) staying execution against the G.I. Sportz Debtors' assets in the United States pursuant to section 1519(a)(1) of the Bankruptcy Code and (ii) applying sections 362 and 365(e) of the Bankruptcy Code in the Chapter 15 Cases on a provisional basis pursuant to sections 105(a), 1519(a)(3), and 1521 of the Bankruptcy Code.  In support of the Motion, the Receiver refers the Court to (i) the Chapter 15 Petitions, (ii) the *Affidavit of Gregory Collings*, executed on October 8, 2020, appended to the *Motion for the Appointment of a Receiver* (the "**Receivership Motion**"), and attesting to the truth of all facts alleged in the Receivership Motion  (the "**Collings Affidavit**"), and (iii) the *Report of KSV Restructuring Inc. as Proposed Receiver of G.I. Sportz Inc., Tippmann US Holdco Inc., GI Sportz Direct LLC, Tippmann Finance LLC, Tippmann Sports, LLC, and Mission Less Lethal LLC,* dated October 9, 2020 (the "**Report**").[2]  In further support of the Motion, the Receiver respectfully states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, section 1501 of the Bankruptcy Code, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue is proper in this District pursuant to 28 U.S.C. § 1410(3) because placing venue in this District will be consistent

---

[2]  A copy of the Collings Affidavit and the Report are attached as **Exhibit A** and **Exhibit B** respectively to the *Declaration of Matthew B. Lunn in Support of Verified Petitions for Recognition of Foreign Proceeding and Related Relief and Motion for Provisional Relief in Aid of Canadian Proceeding* (the "**Lunn Declaration**") contemporaneously filed herewith.

with the interests of justice and convenience for the G.I. Sportz Debtors, having regard to the relief sought by the Receiver.[3]

2.      The statutory predicates for the relief requested herein are sections 105(a), 1519, and 1521 of the Bankruptcy Code.

## BACKGROUND

3.      The G.I. Sportz Debtors are in the business of manufacturing and distributing paintballs, markers, and related accessories (the "**Paintball Business**").  By using 22 soft-gel encapsulation machines, the G.I. Sportz Debtors are able to produce over four billion paintballs on an annual basis—nearly four times as many as their next closest competitor. Through the Paintball Business, the G.I. Sportz Debtors serve a global customer base of over 3,000 fields, stores, and mass market channels, including Walmart, Dick's Sporting Goods and Academy Sports & Outdoors. In addition to its paintball products, the G.I. Sportz Debtors also offer "Less Lethal" products (the "**Less Lethal Products**") under the Mission Less Lethal brand through G.I. Sportz Debtor, Mission Less Lethal LLC.  Less Lethal Products include carbon dioxide powered launchers and non-lethal rounds typically used for crowd control or other less lethal alternatives to the use of deadly force and are primarily sold to government, law enforcement agencies and private security providers (the Less Lethal Products and the Paintball Business collectively, the "**Business**").  The G.I. Sportz Debtors maintain two leased manufacturing facilities: one at the G.I. Sportz Debtors Headquarters in Montréal, Québec and the other in Fort Wayne, Indiana.  The G.I. Sportz Debtors have nine distribution centers throughout North America and Europe, as well as a distribution network including 25 third-party distribution partners.

---

[3] The Receiver consents to the entry of final orders or judgments by the Court, if the Court determines that it cannot enter final orders or judgments consistent with Article III of the Constitution absent the consent of the parties.

4.      G.I. Sportz Inc. is a corporation amalgamated and existing under the laws of Canada. G.I. Sportz Debtor Tippman US Holdco Inc. is a Delaware corporation, G.I. Sportz Debtors GI Sportz Direct LLC, Tippman Sports, LLC, and Tippmann Finance LLC, are limited liability companies organized under the laws of the State of Delaware, and G.I. Sportz Debtor, Mission Less Lethal LLC is a limited liability company organized under the laws of the State of Indiana.[4]  Fulcrum Capital Partners (Collector) V, LP ("**Fulcrum**"), an affiliate of GIS Debt Acquisition Partnership (the "**Partnership**"), is the majority shareholder of the G.I. Sportz Debtors by virtue of its 53.8% interest in G.I. Sportz Inc.  The corporate headquarters of the G.I. Sportz Debtors is located at 6000 Kieran Street,. Montréal, Québec, Canada H4S 2B5.

5.      The G.I. Sportz Debtors and certain non-debtor guarantors (the "**Guarantors**") are indebted to the Partnership in the principal amount of approximately USD $29,432,889 (the "**Secured Obligations**") on a secured basis pursuant to certain credit facilities under a Credit Agreement between G.I. Sportz Inc. as borrower and the Bank of Montreal ("**BMO**") as lender (the "**Credit Agreement**") and certain related security documents, guarantees, and security agreements (together with the Credit Agreement, the "**Loan Documents**") provided by the Guarantors.  BMO assigned its interests under the Loan Documents to the Partnership at a substantial discount pursuant to an Assignment Agreement dated as of September 10, 2020 (the "**Assignment Agreement**"), a redacted copy of which is attached to the Collings Affidavit as **Exhibit R-1**.[5]  On September 14, 2020, the Partnership demanded repayment of the loan and issued a Notice of Intention to Enforce Security pursuant to

---

[4]  A corporate organizational chart appears in the Collings Affidavit in § II(B)(10)**.**

[5]  As noted in the Collings Affidavit, an unredacted copy of the Assignment Agreement will be attached to the confidential appendix of the Report, subject to the issuance of the Sealing Order (as defined therein).

Section 244 of the BIA.  The Partnership also provided the G.I. Sportz Debtors with notice of its intent to seek the appointment of a receiver under the Civil Code of Québec (the "**Civil Code**").

6.     The G.I. Sportz Debtors are in default of their debt obligations under the Credit Agreement.  The Business was under considerable stress prior to the emergence of the COVID-19 pandemic, having incurred losses totaling over USD $45 million since January 1, 2018, according to its year-end financial statements for the periods ending December 31, 2018 and December 31, 2019, and its year-to-date internal financial statements for the eight-month period ended August 31, 2020.

7.     As paintball is a social sport played by a large number of participants, often in teams and in relatively confined areas, the COVID-19 pandemic has had a significant negative impact on the Business due to Canadian and U.S. government policies mandating social distancing.  As a result, operations effectively ceased between March and July 2020 and losses have continued in fiscal 2020 (approximately USD $2 million for the eight month period ended August 31, 2020).  The G.I. Sportz Debtors' operations have only recently started to recover.

8.     The G.I. Sportz Debtors are in default of various covenants under the Credit Agreement, as described in greater detail in the Collings Affidavit.  In addition, interest and costs continue to accrue under the Credit Agreement.  As of the date of the Report, the G.I. Sportz Debtors had approximately USD $5.4 million in cash on hand.  Other than cash, the G.I. Sportz Debtors' working capital assets primarily include its inventory, with a book value of approximately USD $13 million as of August 31, 2020, which is mostly comprised of paintball, marker, and airsoft products, as well as accounts receivable owing from various customers and retailers.  As of August 31, 2020, the book value of the G.I. Sportz Debtors' accounts receivable was approximately USD $7.5 million.

9.      Notwithstanding the defaults under the Credit Agreement, the Partnership has allowed the G.I. Sportz Debtors to continue to have access to the cash on hand to fund its business.  Without the indulgence of the Partnership to allow the G.I. Sportz Debtors to continue to use the cash, the G.I. Sportz Debtors would be unable to service the indebtedness under the Credit Agreement or obligations owed to other secured and unsecured creditors, nor would it have access to the liquidity for working capital purposes.  As a result of the continuing defaults under the Credit Agreement, the Partnership can realize on the cash at any time.

10.      Kore Outdoor (US) Inc., a wholly-owned U.S. subsidiary of Kore Outdoor Inc. (the "**Purchaser**"), has agreed to acquire the U.S.-based assets of the Business in exchange for a demand non-interest bearing note (the "**U.S. Note**") having a principal amount equal to the value of such assets; and Kore Outdoor Inc. will assume the G.I. Sportz Debtors' liability for the Secured Obligations in exchange for the transfer of the Canadian assets of the Business and the U.S. Note (collectively, the "**Purchased Assets**" and such transaction, the "**Contemplated Transaction**").  With the necessary consents, the Purchaser will assume certain of the G.I. Sportz Debtors' contracts with their suppliers and accounts payable owing to certain suppliers.  Following consummation of the Contemplated Transaction, Kore Outdoor Inc. will be the sole beneficial owner of the Purchased Assets and the Partnership will be the sole secured lender to Kore Outdoor Inc.  The Partnership has agreed to provide further funding to facilitate the continued operation of the Business after the completion of the Contemplated Transaction. The Contemplated Transaction will result in the Business continuing to operate as a going concern following its completion, with minimal to no interruptions to business operations and the preservation of hundreds of jobs.  A significant portion of the unsecured vendor obligations are contemplated to be assumed by the Purchaser.

11.     The Receiver, the Purchaser, and the Partnership are in the final stages of settling the terms of an asset purchase agreement (the "**APA**") for the sale of substantially all of the assets of the G.I. Sportz Debtors to the Purchaser, which can only be executed by the Receiver upon (i) the issuance of the Receivership Order, (ii) the appointment of KSV as Receiver by the Québec Court, (iii) the issuance of the Recognition Order by this Court, and (iv) approval of the APA by the Québec Court, which is contemplated to be sought immediately following this hearing.

12.     On October 15, 2020, the Québec Court heard an application by the Partnership under the BIA, placing the G.I. Sportz Debtors into receivership and seeking, among other things, the appointment of KSV as receiver to preserve, protect, and sell the business and assets of the G.I. Sportz Debtors as the G.I. Sportz Debtors have no ability to repay or refinance the Secured Obligations.  Subsequently, the Québec Court entered the Receivership Order on October 15, 2020.

13.     On the date hereof (the "**Petition Date**"), the Receiver commenced these Chapter 15 Cases by filing, among other things, the Chapter 15 Petitions, seeking recognition by this Court of the Canadian Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code (the "**U.S. Proceeding**").  Immediately following recognition of the U.S. Proceeding by this Court, the Receiver intends to bring a motion before the Québec Court recommending that it approve the Contemplated Transaction.  If the Québec Court issues an order approving the Contemplated Transaction the Receiver intends to immediately seek recognition of that order by this Court.

14.     For a detailed description of the G.I. Sportz Debtors' business, corporate organization, capital structure, and circumstances leading to the Canadian Proceeding, the Court

is respectfully referred to (i) the Collings Affidavit and (ii) the Report, both of which were submitted to the Québec Court, and which are attached as **Exhibits A** and **B** respectively, to the Lunn Declaration.

**REQUEST FOR RELIEF**

15.    By this Motion, the Receiver requests entry of an order (i) staying execution against the G.I. Sportz Debtors' assets in the United States pursuant to section 1519(a)(1) of the Bankruptcy Code and (ii) applying sections 362 and 365(e) of the Bankruptcy Code in the Chapter 15 Cases on a provisional basis pursuant to sections 105(a), 1519(a)(3), and 1521(a)(7) of the Bankruptcy Code.

**BASIS FOR RELIEF**

I.    **Section 1519 of the Bankruptcy Code**
**Authorizes the Requested Provisional Relief**

16.    Section 1519 of the Bankruptcy Code authorizes the Court to grant the Receiver certain "relief of a provisional nature" pending the Court's ruling on the Chapter 15 Petitions where such relief is "urgently needed to protect the assets of the debtor or the interests of the creditors," including "staying execution against the debtor's assets."    11 U.S.C. § 1519(1)(a).

17.    In addition, section 1519(a)(3) of the Bankruptcy Code expressly authorizes the Court to grant to the Receiver any relief referenced in, among others, section 1521(a)(7) of the Bankruptcy Code.  Section 1521(a)(7), in turn, provides for any relief available to a trustee, subject to certain statutory exceptions not relevant here.  Section 105(a) of the Bankruptcy Code also allows the Court to "issue any order . . . necessary or appropriate to carry out the provisions of [title 11]."  11 U.S.C. §105(a).  Section 362 of the Bankruptcy Code would apply automatically in a plenary bankruptcy proceeding to stay creditor action during the

trustee's administration of the estate.  Likewise, section 365(e) of the Bankruptcy Code provides relief to a trustee by rendering unenforceable *ipso facto* clauses that would otherwise allow a counterparty to an executory contract or unexpired lease of the debtor to terminate such contract or lease based solely on the basis of a condition of the kind described in section 365(e)(1).[6] Therefore, the protections of these provisions constitute "relief that may be available to a trustee" which this Court may grant, in its discretion, in order to preserve the estate during the pendency of the Chapter 15 Petitions.  11 U.S.C. §§ 1519(a)(3) and 1521(a)(7).

18.     Courts, including those in this district, have granted provisional relief— including, but not limited to, the application of sections 362 and 365(e) of the Bankruptcy Code—pursuant to sections 1519(a)(1) and 1519(a)(3) of the Bankruptcy Code in a number of chapter 15 cases.  *See*, *e.g.*, *In re Groupe Dynamite Inc.*, No. 20-12085 (CSS) (Bankr. D. Del. Sept. 9, 2020) (granting provisional relief, including automatic stay of section 362 and 365(e)); *In re CDS U.S. Holdings, Inc.*, No-20-11719 (CSS) (Bankr. D. Del. July 17, 2020) (granting provisional relief applying the automatic stay of section 362 of the Bankruptcy Code on a limited basis); *In re Essar Steel Algoma Inc.*, No. 15-12271 (BLS) (Bankr. D. Del. Nov. 10, 2016) (same); *In re Sherson Grp. Inc.*, No. 15-11765 (SHL) (Bankr. S.D.N.Y. July 24, 2015) (order granting provisional relief) *In re ARXX Corp.*, No. 13-13313 (KJC) (Bankr. D. Del. Dec. 30,

---

[6] Section 365(e)(1) of the Bankruptcy Code provides:

"Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on —

(A) the insolvency or financial condition of the debtor at any time before the closing of the case;

(B) the commencement of a case under this title; or

(C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

11 U.S.C. § 365(e)(1).

2013) (order granting provisional relief); *In re Xchange Tech. Group LLC*, Case No. 13-12809 (Bankr. D. Del. Oct. 30, 2013) (order granting provisional relief, including protections of automatic stay and 365(e)); *In re Talon Sys. Inc.*, No. 13-11811 (KJC) (Bankr. D. Del. July 22, 2013) (order granting provisional relief).

## II.    The Requested Provisional Relief Is Justified

19.    The relief available under section 1519 of the Bankruptcy Code is available pursuant to "the standards, procedures, and limitations applicable to an injunction." 11 U.S.C. § 1519(e); *In re Innua Canada Ltd.*, 2009 WL 1025088, at *3 (Bankr. D.N.J.).  In the Third Circuit, the "standard for evaluating a motion for preliminary injunction requires a four-part inquiry: "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." *McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009) (citing U.*S. v. Bell*, 414 F.3d 474, 478 n. 4 (3d Cir. 2005).  The Receiver submits that this standard is satisfied in the Chapter 15 Cases.

### 1.    There Is a Substantial Likelihood of Recognition

20.    As detailed more fully in the Chapter 15 Petitions and related *Memorandum of Law in Support of Verified Petitions for Recognition of Foreign Proceeding and Related Relief*, filed contemporaneously herewith, recognition of the Canadian Proceeding is warranted under section 1517 of the Bankruptcy Code and, therefore, there is a substantial likelihood that such relief will be granted.  The Canadian Proceeding is a "foreign main proceeding" and the Receiver is a "foreign representative," as those terms are defined in the Bankruptcy Code in sections 1502(4) and 101(24), respectively.  In addition, the Chapter 15 Cases were duly and properly commenced by filing the Chapter 15 Petitions accompanied by all

fees, documents, and information required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, including:    (a) a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1; (b) a list containing (i) the names and addresses of all persons or bodies authorized to administer foreign proceedings of the G.I. Sportz Debtors, (ii) all parties to litigation pending in the United States in which any of the G.I. Sportz Debtors are a party at the time of the filing of the Chapter 15 Petitions, and (iii) all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code; (c) a statement identifying all foreign proceedings with respect to the G.I. Sportz Debtors that are known to the Receiver; and (d) a copy of the Receivership Order.

### 2.    The Relief Requested Is Necessary to Prevent Irreparable Injury

21.    The Chapter 15 Cases have been commenced for the purpose of obtaining the assistance of this Court in recognizing the Canadian Proceeding and enforcing the Receivership Order in the United States, thereby facilitating an orderly process for the sale of the G.I. Sportz Debtors' businesses and assets.  The Receiver believes that staying execution against the G.I. Sportz Debtors' assets in the United States and the provisional application of sections 362 and 365(e) of the Bankruptcy Code in the Chapter 15 Cases is crucial to prevent efforts by any creditors of the G.I. Sportz Debtors to collect upon their debts or disrupt the G.I. Sportz Debtors' contractual relationships during the pendency of the Chapter 15 Petitions.

22.    The automatic stay in section 362 of the Bankruptcy Code is one of the fundamental protections provided by bankruptcy law.  It halts all collection efforts, harassment, and foreclosure actions, and provides debtors with necessary breathing room from the financial pressures that caused the bankruptcy filing.  Section 365(e) of the Bankruptcy Code provides a debtor with similar relief by prohibiting counterparties from terminating contracts with the debtor solely because of the debtor's bankruptcy filing.  Although such relief is not automatic

upon the commencement of a chapter 15 proceeding, the Court has discretion to grant such relief on a provisional basis pursuant to sections 105(a), 1519(a)(3) and 1521(a)(7) of the Bankruptcy Code. Without the protections of sections 362 and 365(e) of the Bankruptcy Code, the G.I. Sportz Debtors could face immediate and irreparable harm resulting from the piecemeal loss of assets from individual creditor collection and enforcement efforts and the potential termination of significant and valuable agreements.

23.    It has been consistently held that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury." *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988). It has also been held that harm to an estate exists where the orderly determination of claims and the fair distribution of assets are disrupted. *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 714 (2d Cir. 1987); *In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*, 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988). Here, allowing creditors to initiate piecemeal litigation and collection efforts against the G.I. Sportz Debtors in the United States would have a detrimental impact on the G.I. Sportz Debtors' ability to sell their business and maximize the value of their assets. Moreover, the Receiver believes that such actions may have a cascading effect, resulting in significant erosion in enterprise value to the detriment of all stakeholders and defeating the purpose of the stay provisions of the Receivership Order.

24.    The G.I. Sportz Debtors are also parties to agreements, including lease agreements, that may contain standard provisions allowing counterparties to terminate such agreements upon the commencement of a bankruptcy or similar insolvency proceeding. The termination of such agreements, in the absence of the protections of section 365(e) of the Bankruptcy Code, would cause the G.I. Sportz Debtors to lose important contractual rights and

benefits to the detriment of their businesses and, in turn, their creditors and other stakeholders. In such circumstances, irreparable harm would be done to the G.I. Sportz Debtors and to the chances of a successful outcome for the Canadian Proceeding.

**3.      Granting the Provisional Relief Will Not Result in Even Greater Harm to Creditors**

25.      The entry of the Provisional Order is justified under the balance of hardships test.   The G.I. Sportz Debtors' creditors will not be harmed by the requested provisional relief as it will merely preserve the status quo and enable the G.I. Sportz Debtors to continue their operations for the short time necessary for the Court to rule on the Chapter 15 Petitions.  As stated in the legislative history to section 362 of the Bankruptcy Code:

> The automatic stay also provides creditor protection.  Without it, certain creditors would be able to pursue their own remedies against the debtor's property.  Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors.  Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

House Report No. 95-595, 95th Cong., 1st Sess. 340-2 (1977).  Similarly, the legislative history to section 365(e) provides:

> Subsection (e) invalidates ipso factor [sic] or bankruptcy clauses. These clauses, protected under present law, automatically terminate the contract or lease, or permit the other contracting party to terminate the contract or lease, in the event of bankruptcy. This frequently hampers rehabilitation efforts.  If the trustee may assume or assign the contract under the limitations imposed by the remainder of the section, then the contract or lease may be utilized to assist in the debtor's rehabilitation or liquidation.

House Report No. 95-595, 95th Cong., 1st Sess. (1977).

26.      The Receiver submits that there will be no harm to creditors if the Receiver's request for provisional relief is granted.  Any creditor or potential creditor that objects

to the relief requested will have an opportunity to be heard, and may apply to this Court for relief if they believe they are harmed by the terms of the Provisional Order.  By contrast, the G.I. Sportz Debtors will suffer significant injury from creditor collection efforts and contract terminations if the Court does not grant the relief sought by the Motion.

4.     **The Public Interest Favors Granting the Provisional Relief**

27.    The requested provisional relief is consistent with the policy underlying bankruptcy law and is in the public interest, because it will facilitate the efforts to complete a court-supervised sale of the G.I. Sportz Debtors' businesses for the ultimate benefit of the G.I. Sportz Debtors' creditors, including vendors, customers, and employees.  *See Rehabworks, Inc. v. Lee (In re Integrated Health Servs., Inc.)*, 281 B.R. 231, 239 (Bankr. D. Del. 2002) ("In the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests."); *In re Lazarus Burman Assocs.*, 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993) ("The public interest, in the context of a bankruptcy proceeding, is in promoting a successful reorganization."); *see also In re Adelphia Comm'cns Corp. et al.*, 368 B.R. 140, 284 (Bankr. S.D.N.Y. 2007) ("The public interest requires bankruptcy courts to consider the good of the case as a whole."); *Am. Film Techs v. Taritero (In re Am. Film Techs.)*, 175 B.R. 847, 849 (Bankr. D. Del. 1994) ("It is 'one of the paramount interests' of this court to assist the Debtor in its reorganization efforts.") (quoting *Gathering Rest., Inc. v. First Nat'l Bank of Valparaiso (In re Gathering Restr., Inc.)*, 79 B.R. 992, 1001 (Bankr. N.D. Ind. 1986)).

28.    In addition, granting the provisional relief is in the public interest, because it promotes cooperation between jurisdictions in cross-border insolvencies, which is an express purpose of chapter 15 of the Bankruptcy Code.  Specifically, section 1501(a) of the Bankruptcy Code provides:

(a)    The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of . . .

(3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;

(4) protection and maximization of the value of the debtors' assets; and

(5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501(a).

29.    Further, the Québec Court directed the Receiver to seek such relief in this Court as necessary to give effect to the Receivership Order in the United States, and specifically requested this Court's assistance through the entry of the Receivership Order.  Under section 1525(a) of the Bankruptcy Code, "consistent with section 1501, this court shall cooperate to the maximum extent possible with a foreign court or a foreign representative."  11 U.S.C. §§ 1525(a) and 1501.  The Receiver believes that entry of the Provisional Order is necessary to give effect to the Receivership Order of the Québec Court.  Thus, in addition to the reasons set forth above, this Court should grant the requested relief in accordance with well-established principles of international comity, as embodied in sections 1501 and 1525 of the Bankruptcy Code.

## NOTICE

30.    Notice of this Motion has been provided to the Office of the United States Trustee for the District of Delaware.  The Receiver requests that the Court enter the Provisional Order without notice to other creditors.  The Receiver proposes to notify all creditors and parties in interest of the filing of the Chapter 15 Petitions and the relief requested therein in the form and

manner set forth in the *Motion for Order Scheduling Hearing and Specifying the Form and Manner of Service of Notice*, filed contemporaneously herewith.  In light of the nature of the relief requested herein, the Receiver submits that no other or further notice of the Motion is necessary or required.

## **NO PRIOR REQUEST**

31.    No previous request for the relief requested herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

## **CONCLUSION**

WHEREFORE, the Receiver respectfully requests that this Court enter the Provisional Order, substantially in the form attached hereto as **Exhibit A**, and grant any such other and further relief as this Court deems just and proper.

Dated: October 16, 2020     YOUNG CONAWAY STARGATT & TAYLOR, LLP
   Wilmington, Delaware

          */s/ Matthew B. Lunn*
          Michael R. Nestor (No. 3526)
          Matthew B. Lunn (No. 4119)
          Rodney Square
          1000 North King Street
          Wilmington, Delaware 19801
          Telephone:  (302) 571-6600
          Facsimile:  (302) 571-1253
          Emails: mnestor@ycst.com
             mlunn@ycst.com

          *Attorneys for KSV Restructuring Inc., as Receiver and*
          *Foreign Representative of the G.I. Sportz Debtors*

**EXHIBIT A**

**Provisional Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 15 |
| G.I. SPORTZ INC., *et al*,[1] | Case No.  20-12610 (___) |
| Debtors in a Foreign Proceeding. | (Jointly Administered) |
| | **Ref. Docket No. ___** |

## ORDER GRANTING PROVISIONAL RELIEF
## <u>IN AID OF THE CANADIAN PROCEEDING</u>

**THIS MATTER** was brought before the Court by KSV Restructuring Inc., the court-appointed receiver (the "**Receiver**") and authorized foreign representative of G.I. Sportz Inc., Tippmann US Holdco Inc., GI Sportz Direct LLC, Tippmann Sports, LLC, Mission Less Lethal LLC, and Tippmann Finance LLC (each, a "**G.I. Sportz Debtor**" and collectively, the "**G.I. Sportz Debtors**").  The G.I. Sportz Debtors are in a proceeding (the "**Canadian Proceeding**") under Canada's *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3 (as amended,  the "**BIA**"), pending before the Superior Court (Commercial Division) of the Province of Québec, District of Montréal (the "**Québec Court**").

The Receiver commenced the the above-captioned cases (the "**Chapter 15 Cases**") under chapter 15 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "**Bankruptcy Code**") with the filing of petitions on behalf of the G.I. Sportz Debtors pursuant to sections 1504 and 1515 and the *Verified Petition for Recognition of Foreign*

---

[1] The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, follow in parentheses: G.I. Sportz, Inc. (8551), Tippmann US Holdco Inc. (5037), GI Sportz Direct LLC (5359), Tippmann Sports, LLC (0385), Mission Less Lethal LLC (4604), and Tippmann Finance LLC (n/a).  The G.I. Sportz Debtors' executive headquarters is located at 6000 Kieran Street, Montréal, Québec, Canada H4S 2B5.

*Proceeding and Related Relief* and the *Motion for Provisional Relief in Aid of Canadian Proceeding*, dated October 16, 2020 (collectively, the "**Chapter 15 Petitions**").

The Receiver filed a *Motion for Provisional Relief* on October 16, 2020 (the "**Motion**")[2] seeking the entry of an order (i) staying execution against the G.I. Sportz Debtors' assets in the United States pursuant to section 1519(a)(1) of the Bankruptcy Code and (ii) applying sections 362 and 365(e) of the Bankruptcy Code in these Chapter 15 Cases on a provisional basis pursuant to sections 105(a), 1519, and 1521 of the Bankruptcy Code.

At a hearing held on [●], 2020, the Court considered and reviewed the Motion, the Chapter 15 Petitions, and the other pleadings and exhibits submitted by the Receiver in support of the Motion. Any objections to the Motion that have not been withdrawn or resolved have been overruled.

After due deliberation and sufficient cause appearing therefore, the Court finds and concludes as follows:

I.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

II.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, section 1501 of the Bankruptcy Code, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P) and the Court may enter a final order consistent with Article III of the United States Constitution. Venue for this proceeding is proper before this Court pursuant to 28 U.S.C. § 1410(3).

III.   The Receiver has demonstrated a substantial likelihood of success on the merits that (i) the G.I. Sportz Debtors are subject to a pending "foreign

---

[2] Capitalized terms used, but not otherwise defined herein, have the meanings given to them in the Motion.

main proceeding" as that term is defined in section 1502(4) of the Bankruptcy Code; (ii) the Receiver is a "foreign representative" as that term is defined in 101(24) of the Bankruptcy Code; and (iii) all statutory elements for recognition of the Canadian Proceeding are satisfied in accordance with section 1517 of the Bankruptcy Code.

IV.    The Receiver has demonstrated that (i) the commencement of any proceeding or action against the G.I. Sportz Debtors and their respective businesses and assets should be enjoined pursuant to sections 105(a), 1519, and 1521 of the Bankruptcy Code; (ii) that the application of sections 362 and 365(e) of the Bankruptcy Code in the Chapter 15 Cases is necessary to permit the fair and efficient administration of the Canadian Proceeding and to allow the Receiver to consummate an orderly sale of the assets of the G.I. Sportz Debtors; and (iii) the relief requested will not cause either an undue hardship nor create any hardship to parties in interest that is not outweighed by the benefits of the relief granted herein.

V.    The Receiver has demonstrated that unless this Order is issued, there is a material risk that one or more parties in interest may take action against the G.I. Sportz Debtors and their respective businesses and assets, thereby interfering with the jurisdictional mandate of this Court under chapter 15 of the Bankruptcy Code and causing harm to the Receiver's effort to consummate a sale and maximize the value of the G.I. Sportz Debtors' assets.  As a result, the G.I. Sportz Debtors will suffer immediate and irreparable harm for which they will have no adequate remedy at law and, therefore, it is necessary that the Court grant the relief requested by the Motion.

VI.    Further, unless this Order issues, the assets of the G.I Sportz Debtors located in the United States could be subject to efforts by creditors to control, possess, or execute upon such assets and such efforts could result in the G.I. Sportz Debtors suffering immediate and irreparable injury, loss, or damage by, among other things, (i) interfering with the jurisdictional mandate of this Court under chapter 15 of the Bankruptcy Code and (ii) interfering with or undermining the success of the Canadian Proceeding and the G.I. Sportz Debtors' efforts to pursue and consummate a sale of their businesses for the benefit of all their stakeholders.

VII.    The Receiver has demonstrated that, without the protection of section 365(e) of the Bankruptcy Code, there is a material risk that counterparties to certain of the G.I. Sportz Debtors' agreements may take the position that the commencement of the Canadian Proceeding authorizes them to terminate such contract or accelerate obligations thereunder.  Such termination or acceleration, if permitted and valid, could severely disrupt the G.I. Sportz Debtors' operations, result in irreparable damage to the value of the G.I. Sportz Debtors' businesses, and cause substantial harm to the G.I. Sportz Debtors' creditors and other parties in interest.

VIII.    The Receiver has demonstrated that no injury will result to any party that is greater than the harm to the G.I. Sportz Debtors' businesses, assets, and property in the absence of the requested relief.

IX.    The interests of the public will be served by entry of this Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

1.    The Motion is granted as set forth herein.

2.    Pending entry of a recognition order pursuant to section 1521 of the Bankruptcy Code, sections 362 and 365(e) of the Bankruptcy Code shall apply in the Chapter 15 Cases, and this Order shall operate as a stay of execution against the G.I. Sportz Debtors and their respective businesses and assets within the territorial jurisdiction of the United States pursuant to section 1519(a)(1) of the Bankruptcy Code.  Specifically, all persons and entities are hereby enjoined from (a) continuing any action or commencing any additional action involving the G.I. Sportz Debtors, their assets, or the proceeds thereof; (b) enforcing any judicial, quasi-judicial, administrative, or regulatory judgment, assessment, order, or arbitration award against the G.I. Sportz Debtors or their respective assets; (c) commencing or continuing any action to create, perfect, or enforce any lien, setoff, or other claim against the G.I. Sportz Debtors or their respective assets; or (d) managing or exercising control over the G.I. Sportz Debtors' assets located within the territorial jurisdiction of the United States, except as expressly authorized by the G.I. Sportz Debtors in writing.

3.    Notwithstanding anything to the contrary contained herein, this Order shall not be construed as (a) enjoining the police or regulatory act of a governmental unit, including a criminal action or proceeding, to the extent not stayed under section 362 of the Bankruptcy Code; (b) staying the exercise of any rights that sections 362(o) and 1519(f) of the Bankruptcy Code do not allow to be stayed; or (c) limiting, abridging, or otherwise affecting the rights afforded to the Receiver pursuant to the Receivership Order.

4.      Any party in interest may make a motion seeking relief from, or modification of, this Order, by filing a motion on not less than seven (7) business days' written notice to (i) counsel for the Receiver, (ii) counsel for the Partnership, and (iii) counsel to Fulcrum Capital Partners (Collector) V, LP ("**Fulcrum**"), and the Court will hear such motion on a date to be scheduled by the Court.   Notices to counsel for the Receiver should be addressed to Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attention: Michael R. Nestor, Esq. (mnestor@ycst.com) and Matthew B. Lunn, Esq. (mlunn@ycst.com).

5.      Notwithstanding any provision in the Bankruptcy Rules to the contrary:  (i) this Order shall be effective immediately and enforceable upon entry; (ii) the Receiver shall not be subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (iii) the Receiver is authorized and empowered, and may in its discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

6.      Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, made applicable to this proceeding pursuant to Bankruptcy Rule 7065, no notice to any person is required prior to entry and issuance of this Order.   Pursuant to Bankruptcy Rule 7065, the provisions of Rule 65(c) of the Federal Rules of Civil Procedure are hereby waived, to the extent applicable.  Notice of the Motion as set forth therein is adequate and sufficient service and notice of the Motion and this Order, and no other or further notice need be provided.

7.      This Court shall retain jurisdiction with respect to any and all matters relating to the interpretation or implementation of this Order.